## S02A0787. EHLE v. THE STATE.
(570 SE2d 284)

SEARS, Presiding Justice.

The appellant, Christopher Ehle, appeals from his conviction for the murder of Paul Whittemore. On appeal, Ehle contends, among other things, that the trial court erred in permitting the State to introduce evidence that he had been arrested on an unrelated charge about two weeks after Whittemore's murder and escaped from custody, and that the trial court erred in permitting police officers to give certain opinion testimony.[1] However, having reviewed these and other contentions raised by Ehle, we conclude either that these contentions are without merit, that Ehle is procedurally barred from raising them, or that even if an error occurred, the error was harmless. Accordingly, we affirm the trial court's judgment.

1. The evidence, which included the testimony of Robert Baker, who pled guilty to the murder of Whittemore before Ehle's trial, would have authorized a rational trier of fact to conclude that on December 8, 1995, Ehle and Robert Baker saw the victim at a bar, and that Whittemore invited Ehle and Baker to go to his apartment. At Whittemore's apartment, Ehle and Baker tied Whittemore's hands and ankles together and tied his hands to the headboard of his bed. They also tightly gagged Whittemore's mouth with socks and tape. After tying and gagging Whittemore, Ehle and Baker took Whittemore's wallet, car keys, television, and numerous other items, and then drove Whittemore's car to the home of Charles Stewart in Alabama. About 8:00 p.m., on December 9, a friend of Whittemore's went to his apartment, saw the apartment in a state of disarray, and discovered Whittemore tied to the bed. Whittemore's friend called the

---

[1] The crime occurred on December 8, 1995, and Ehle was indicted on August 1, 1996. On May 7, 1998, a jury found Ehle not guilty of malice murder; guilty of felony murder, with false imprisonment as the underlying felony; not guilty of armed robbery; and guilty of theft by taking. That same day, the trial court sentenced Ehle to life in prison for the felony murder offense and to 20 consecutive years in prison for the theft offense. On May 27, 1998, Ehle filed a motion for new trial. On June 5, 2001, the trial court permitted Ehle's counsel to withdraw from the case, and on June 21, 2001, the court reporter completed the certification of the trial transcript. On August 16, 2001, new counsel filed an amended motion for new trial, and on August 21, 2001, the trial court denied Ehle's motion for new trial, as amended. On September 17, 2001, Ehle filed a notice of appeal, and the appeal was docketed in this Court on February 7, 2002. The appeal was submitted for decision on briefs on May 2, 2002.

police, and forensic evidence showed that Whittemore had died from asphyxiation.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Ehle guilty of felony murder and theft by taking beyond a reasonable doubt.[2]

2. Ehle contends that the trial court erred in permitting the State to introduce evidence that, about two weeks after Whittemore's murder, Ehle escaped from custody while under arrest on an unrelated charge. We disagree. Significantly, the record shows that, before Ehle's escape, he was aware that he was a suspect in the murder investigation concerning Whittemore. Thus, the trial court properly admitted evidence of the escape, as "evidence of flight and escape from confinement are admissible as circumstantial evidence of consciousness of guilt."[3]

3. Ehle next contends that the trial court erred in permitting the State to introduce the hearsay statements of a Mr. Sheppard, a State's witness who died before trial, under the necessity exception to the hearsay rule, and that the introduction of the hearsay statements also violated Ehle's right of confrontation. In this regard, a police officer was permitted to testify that Sheppard told the officer that Ehle had told Sheppard that Ehle and a friend had tied up someone and taken property that belonged to that person, and that Ehle gave Sheppard a coat that Ehle said had belonged to the victim.[4]

To be admissible under the necessity exception to the hearsay rule, hearsay statements "must not only be necessary, but must be accompanied by particular guarantees of trustworthiness."[5] In determining the trustworthiness of a statement, a trial court must consider the totality of the circumstances surrounding the making of the statement.[6] Here, Ehle contends that the State failed to show sufficient guarantees of trustworthiness. We conclude, however, that even if the trial court erred in admitting Sheppard's statements into evidence, the error was harmless. First, evidence was properly admitted that Ehle told police officers that Sheppard had a coat that Ehle had stolen from the victim; that officers obtained the coat from Sheppard; and that the victim's father identified the coat as belonging to the victim. Moreover, other witnesses testified that Ehle told them that he helped Baker tie up the victim. Thus, Sheppard's statements to

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Landers v. State*, 270 Ga. 189, 191 (508 SE2d 637) (1998).

[4] The coat in question was admitted into evidence at trial, and was identified by the victim's father as being the victim's coat.

[5] *Todd v. State*, 274 Ga. 98, 100 (3) (549 SE2d 116) (2001).

[6] Id.; *Yancey v. State*, 275 Ga. 550 (570 SE2d 269) (2002).

the officers were merely cumulative of other properly admitted evidence. Moreover, the evidence of Ehle's guilt was overwhelming. For these reasons, we conclude that the evidence was harmless beyond a reasonable doubt.[7]

4. Over Ehle's objection, a police officer who interviewed Ehle testified that it was his opinion that Ehle stated that he used a knife to cut ham or beef at the victim's home in order to supply a reason why his fingerprints would be found on the knife, and that it was the officer's opinion that Ehle was not actually remorseful when he stated that, after the crime, he had cried and prayed for the victim, but that instead Ehle's statements about the victim were made to try to show Ehle's character and lack of involvement in the crime. Moreover, over Ehle's objection, another officer testified that it was his opinion, based upon the height and weight of the victim, the abrasions found on the victim, and the way in which the victim was bound and gagged, that one person could not have bound and gagged the victim. On appeal, Ehle contends that the first officer's opinions concerned Ehle's credibility; that credibility is a matter solely for the jury to determine; and that the trial court therefore erred in permitting the officer to give his opinion testimony. As for the second officer, Ehle contends that the officer's opinion was not beyond the ability of the average layman to draw from the evidence in the case and that therefore the trial court erred in permitting the officer to testify regarding these opinions.

As for the first officer's testimony, we conclude that even if any error did occur,[8] the error was harmless given the overwhelming evidence that Ehle participated in the felony of false imprisonment and that the victim died as a result of that felony.[9] Similarly, we conclude that any error in permitting the second officer to testify that it was his opinion that one person could not have bound and gagged the victim was harmless.[10]

5. When Ehle's taped interview with the police was played for the jury, the trial court provided the jury with a written transcript of the interview. Ehle contends that the trial court erred by failing to instruct the jury that it is the tape recording and not the transcript that constitutes evidence; that the jury must determine for itself what was said on the tape recording; that if the jury cannot determine from the tape recording what was said, the jury should ignore

[7] See *Mangum v. State*, 274 Ga. 573, 577 (555 SE2d 451) (2002); *Dorsey v. State*, 273 Ga. 754, 755 (2) (546 SE2d 275) (2001).

[8] See *Turtle v. State*, 271 Ga. 440, 443 (520 SE2d 211) (1999); *Griffin v. State*, 267 Ga. 586, 587 (481 SE2d 223) (1997).

[9] *Heard v. State*, 274 Ga. 196, 199-200 (552 SE2d 818) (2001).

[10] Id.

the corresponding portions of the written transcript; and that in the event of discrepancies between the recording and the transcript, the jury should resolve the discrepancy in favor of the recording. However, when the trial court asked Ehle if he had any concerns with the jury having a transcript while the taped interview was played, Ehle stated only that the jury could review the transcript, but that the transcript could not go out with the jury to the jury room. Because Ehle acquiesced in the jury reviewing the transcript without any limiting instruction, we conclude that he is procedurally barred from complaining of the lack of those instructions on appeal.[11]

6. In his sixth enumeration of error, Ehle contends that the police officers that conducted his interview questioned him after he invoked his right to counsel and that the trial court therefore erred in admitting his statement into evidence. We disagree. At best, Ehle's statement that "he should perhaps have an attorney look at [the state's] evidence" was an equivocal request for counsel. Under the Constitution of the United States, an officer is not required to cease questioning someone who makes an equivocal request for counsel and to clarify whether that person wants a lawyer.[12] Although this Court has not resolved whether such clarifying questions are necessary under the Georgia Constitution,[13] the officer in this case did clarify that Ehle wished to speak with the officers without the presence of counsel. Accordingly, the trial court did not err in ruling that the statement was admissible.[14]

7. Contrary to Ehle's contention, we conclude that the trial court did not err in ruling that the State offered a race-neutral reason for striking a prospective juror[15] and that Ehle failed to carry his burden

---

[11] See *State v. Belt*, 269 Ga. 763 (505 SE2d 1) (1998) (in the absence of a request, a trial court has no obligation to give a limiting instruction regarding similar transaction evidence); *Stanford v. State*, 272 Ga. 267, 270-271 (528 SE2d 246) (2000) (when the defendant requested a contemporaneous limiting instruction on similar transaction evidence, but the trial court stated that it would give one in its final charge to the jury and the defendant stated "Okay," the defendant acquiesced in the ruling and was procedurally barred from complaining of the lack of a contemporaneous limiting instruction on appeal).

[12] *Davis v. United States*, 512 U. S. 452, 459 (114 SC 2350, 129 LE2d 362) (1994); *Fitz v. State*, 275 Ga. 349, 353 (566 SE2d 668) (2002).

[13] See *Carroll v. State*, 275 Ga. 160-162 and n. 2 (563 SE2d 125) (2002); *Jordan v. State*, 267 Ga. 442, 444-446 and n. 4 (480 SE2d 18) (1997); *Luallen v. State*, 266 Ga. 174, 177-179 (465 SE2d 672) (1996). See also *Green v. State*, 275 Ga. 569 (570 SE2d 207) (2002), in which this Court noted that although the federal courts have held that an assertion of the right to silence under the United States Constitution must be clear and unambiguous before interrogators are required to stop questioning, this Court had not decided whether to require interrogators to clarify an ambiguous assertion of the right to remain silent under the Georgia Constitution.

[14] See *Fitz*, supra at 353; *Nguyen v. State*, 273 Ga. 389, 397 (543 SE2d 5) (2001).

[15] The reason for the strike offered by the State was that the prospective juror stated that she had had an unpleasant experience with the police that occurred when she reported to the police that she was the victim of an assault by her roommate and the police

to show that the State had engaged in racial discrimination in striking that prospective juror.[16] Accordingly, the trial court did not err in denying Ehle's challenge under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

8. Because there was evidence that Ehle's appearance had changed from the time of the crime to the time of trial, we conclude that the trial court did not err in permitting a State's witness to identify Ehle from a photograph taken of him at the time of the crime.[17]

9. Ehle contends that the trial court should have excluded the testimony of two State's witnesses because the State failed to comply with OCGA § 17-16-8 by failing to provide Ehle with the birth dates of the two witnesses at least ten days before trial. However, because Ehle did not request that the trial court exclude the witnesses' testimony, because the witnesses' birth dates were provided to the defense during trial, because the defense did not request a continuance to attempt to cure any prejudice from the failure to have the birth dates before trial, and because the defense had had the opportunity to interview the witnesses before trial, we conclude that the trial court did not abuse its discretion in failing to prohibit the witnesses from testifying.[18]

10. Finally, we conclude that the trial court did not err in ruling that Ehle had to impeach several State's witnesses with certified copies of their past criminal convictions and not by asking them on cross-examination whether they had such convictions.[19]

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 30, 2002.

*David C. Butler*, for appellant.

*Patrick H. Head, District Attorney, Amy H. McChesney, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jill M. Zubler, Assistant Attorney General*, for appellee.

---

threatened to take her to jail.

[16] See *Thomas v. State*, 274 Ga. 156, 160-161 (549 SE2d 359) (2001).

[17] *Rittenhouse v. State*, 272 Ga. 78, 79-80 (3) (526 SE2d 342) (2000); *Drane v. State*, 265 Ga. 255, 260 (12) (455 SE2d 27) (1995).

[18] See OCGA § 17-16-6; *State v. Dickerson*, 273 Ga. 408, 411-412 (542 SE2d 487) (2001).

[19] *Kimbrough v. State*, 254 Ga. 504, 505 (330 SE2d 875) (1985).