## A06A1093. HOWIE v. THE STATE.
(637 SE2d 134)

BERNES, Judge.

Willie Howie appeals from his misdemeanor convictions of two counts of family violence battery, three counts of cruelty to children in the second degree, and one count of obstructing or hindering persons making emergency telephone calls. In his sole enumeration of error, Howie contends that the trial court erred when it allowed certain testimony from the responding officer related to other domestic violence cases on which he had worked in order to explain inconsistencies in the victim's statements. He asserts that the testimony was irrelevant and improperly bolstered the credibility of the child witnesses. Finding no harmful error, we affirm.

Viewed in the light most favorable to the verdict, the evidence adduced at trial showed that Howie had been living with C. J., his girlfriend of seventeen years, and their three children. On the night of February 8, 2003, Howie returned home drunk after having been gone for nearly a day and a half and became angry because he believed that someone had opened a piece of his mail. A verbal altercation ensued between Howie and C. J. which ultimately resulted in C. J. demanding that he take his belongings and leave the residence.

---

[21] See *In the Interest of K. A. S.*, 279 Ga. App. 643, 650 (1) (b) (632 SE2d 433) (2006).
[22] See id.

While gathering his things, Howie demanded that his 12-year-old son help him remove a big screen television that was being watched by C. J. and the children. C. J. told the son not to comply with Howie's demand. When his son's help was not forthcoming, Howie took off his belt and struck his son at least twice, leaving visible welts on the child's abdomen. C. J. intervened and Howie struck her on the face with the belt, also leaving a visible welt.

C. J. tried to call 911, but Howie pulled the phone out of the wall. Howie's son then ran to the neighbors' house and successfully summoned the police. The entire incident was observed by Howie's and C. J.'s daughters, ages nine and ten, who cried and screamed throughout the ordeal.

At trial, the state presented testimony from Howie's son and oldest daughter, both of whom reiterated the occurrence of the events as stated above.[1] The state also presented testimony from the responding officer who interviewed C. J., the son, and the daughter on the night the incident occurred, all of whom gave statements consistent with that outlined above. The officer testified that C. J. told him that her son had been subject to "multiple strikes" by Howie, and that Howie's son said that he had been hit three to five times. He also personally observed and photographed several raised welts on the child's abdomen and a welt on C. J.'s face. Copies of the photographs were tendered into evidence and seen by the jury, although the officer testified that only two of the welts on the child's skin were visible in the pictures because of his dark complexion.

C. J. testified at trial and admitted that Howie had struck her face with a belt and pulled the telephone out of the wall, but contrary to her previous statements, denied that Howie ever struck their son. Rather, she opined that the child received his injuries by falling against the fireplace after a struggle had ensued between herself and Howie.

Howie also testified at trial and denied hitting either C. J. or his son. He speculated that his son received his injuries by falling against the fireplace or the couch, and that C. J. received her injury by hitting herself with the belt when she tried to get it away from him. The responding officer testified that, from his experience, the welts which he observed on the child's abdomen had been inflicted by a belt or another pliable instrument that had conformed to the child's body. He stated that they were inconsistent with injuries that one would expect to see if the child had fallen against a solid object, such as a

---

[1] While the daughter steadfastly maintained at trial that Howie struck her brother with the belt, she admitted that she had told defense counsel otherwise in a pretrial interview conducted in her mother's presence.

couch or fireplace. The state also highlighted the fact that, had Howie's son fallen against the fireplace, one would have expected to see an injury on the right side of his body, but the welts were actually on his left side.

The responding officer also testified over objection that he had been involved in "hundreds of domestic-violence cases," and that it is "not uncommon" for victims of domestic violence to recant and/or change portions of their stories "for various reasons." The officer went on to explain that "[s]ome people regret an outcry because, whether that person is convicted, that will take away their sole income to the family. Other people are afraid of repercussions after the fact."

Howie contends the above-quoted testimony from the responding officer was irrelevant and improperly bolstered the credibility of the child witnesses. We agree. "The fact that, in the officer's previous experience, [it was not uncommon for domestic violence victims to recant their stories was] not relevant to explain either the conduct or the testimony of the victim[s] . . . in the instant case." *Lott v. State*, 206 Ga. App. 886, 887 (2) (426 SE2d 667) (1992). Compare *Hawks v. State*, 223 Ga. App. 890, 892 (4) (479 SE2d 186) (1996).

Nonetheless, considering the facts of the case and the evidence as a whole, we find it highly improbable that the challenged testimony contributed to the verdict. As such, admission of the challenged testimony was harmless. See *Huntley v. State*, 271 Ga. 227, 230 (5) (518 SE2d 890) (1999) (detective's statement that he believed that the defendant was lying during an interview, even if it amounted to an improper comment on the defendant's veracity, likely did not contribute to the verdict); *Crider v. State*, 246 Ga. App. 765, 769 (4) (a) (542 SE2d 163) (2000) (officer's statement that he believed that the child witness was being truthful was inadmissible, but there is no reasonable likelihood that the results would have differed absent the testimony); *Cline v. State*, 224 Ga. App. 235, 236-237 (2) (480 SE2d 269) (1997) (statement from a Department of Family and Children Services employee that she found the child victim's testimony "credible" was improper but harmless in light of the evidence presented). See also *Roop v. State*, 279 Ga. 183, 184-185 (2) (611 SE2d 34) (2005); *Marshall v. State*, 276 Ga. 854, 856 (2) (b), (c) (583 SE2d 884) (2003); *Ehle v. State*, 275 Ga. 560, 562 (4) (570 SE2d 284) (2002). Cf. *Buice v. State*, 239 Ga. App. 52, 54-56 (2) (520 SE2d 258) (1999).

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED OCTOBER 4, 2006 — ■

*Lenzer & Lenzer, Thomas P. Lenzer*, for appellant.

*Daniel J. Porter, District Attorney, Nancy J. Dupree, Assistant District Attorney*, for appellee.