**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/**

**June 18, 2012**

# In the Court of Appeals of Georgia

A12A0517. LEWIS v. THE STATE.

BARNES, Presiding Judge.

A jury convicted Alphonzo Jamal Lewis of aggravated assault (family violence) for hitting the victim with his "hands, fists, and/or feet" and with battery (family violence) by striking her with a curtain rod. The trial court sentenced him as a recidivist to 20 years, to serve five years in prison followed by fifteen years on probation. On appeal, Lewis enumerates eleven errors, but argues six, involving the admission of similar transaction evidence, evidentiary rulings, and objections to the State's closing arguments. For the reasons that follow, we affirm.

Viewing the evidence at trial in the light most favorable to the verdict, the evidence showed that Lewis lived with the victim and struck her repeatedly on June 28, 2009. The victim recanted at trial and testified that she had lied to the police when

she told them Lewis had hit her because she was angry at him for not paying her cell phone bill, and that the bruises, scratches, and fractured rib she had then were not caused by Lewis.

The victim's previous statements and testimony from the investigating officers and other witnesses established that Lewis came home drunk one night at 3 a.m. and accused the victim of seeing other men. The victim went to another bedroom but Lewis kicked in the door, followed her into the bathroom, pulled down the shower rod and hit her with it, then dragged her into the hallway and threw her on top of her dog's cage. He then dragged her into the living room and choked and kicked her. Later that day, the victim went to the hospital, accompanied by Lewis, and received medicine for a stomach ailment, but did not tell the health care workers about everything that was hurting. When the victim went to work two days later, her co-workers called her mother and the police because, as they told her, she was looking "[l]ike someone had beat [her] up or something."

The victim's mother testified that the victim was "crying and hysterical" and complained that her side and back were hurting. She had a mark on her back that looked like a footprint and scratches around her neck. She told a co-worker, the responding police officer, and a detective that Lewis had assaulted her and gave

details of the beating. She went to the emergency room because her wrists and side were hurting, and was diagnosed with a cracked rib.

The State presented evidence of prior difficulties between Lewis and the victim. The victim's brother testified that in May 2009, Lewis accused him of stealing money and said, "I should beat your sister in front of you." Lewis shoved the victim and her brother responded by hitting Lewis across the head. In his written statement to police, the brother said that Lewis then sprayed him with mace. The State also introduced evidence of two similar transactions, in which Lewis struck women with whom he had a relationship.

Lewis was indicted on four counts of aggravated assault, one count of aggravated battery, and one count of false imprisonment. The trial court directed verdicts of acquittal on the charges of aggravated battery, false imprisonment, and two of the aggravated assault charges, and the jury convicted Lewis of one count of aggravated assault and one count of battery as a lesser included offense of a second count of aggravated battery.

1. Lewis argues that the trial court erred in denying his motion for a directed verdict on Count 2, which charged him with aggravated assault with his hands, fists,

or feet, arguing that the State submitted no evidence that these objects were likely to result in serious bodily injury when used offensively.

> Aggravated assault has two essential elements: (1) that an assault, as defined by OCGA § 16-5-20, was committed on the victim, and (2) that it was aggravated by either (a) an intention to murder, rape, or rob, or (b) the use of a deadly weapon. OCGA § 16-5-21. Although hands and feet are not considered per se deadly weapons within the meaning of OCGA § 16-5-21 (a) (2), the jury may find them to be so depending on the circumstances surrounding their use, including the extent of the victim's injuries. Under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence was sufficient to convict [Lewis] of aggravated assault.

(Citation omitted.) *Dixon v. State*, 268 Ga. 81, 82-83 (1) (485 SE2d 480) (1997).

2. Lewis argues that the trial court erred in denying his motion for a mistrial after the State prefaced a question to the victim with, "There was a revocation hearing, another hearing, and we won't go into the gist of the nature of the hearing."[1] Lewis objected, and out of the jury's hearing, the State explained that its reference to

---

[1] The appellant's brief fails to comply with Court of Appeals Rule 25 (c) (1), which provides that "[t]he sequence of arguments in the briefs shall follow the order of the enumeration of errors, and shall be numbered accordingly." We will address the enumerations in the order argued, but remind counsel that the rules regarding the structure of briefs are designed to assist the court in fully considering the merits of the appellant's arguments.

4

"revocation" was inadvert and that it realized it should not have mentioned the word but had been looking at the transcript. The court ruled,

> I find no basis for a mistrial simply based upon the use of the word "revocation." I find that it was inadvertent and not intentional and that it did not address specifically whether or not the defendant was on probation, that he was charged with anything or that it was a court proceedings based upon allegation that he had violated the law in any terms of probation.

Lewis argues that the trial court's failure to give a curative instruction was error requiring the grant of a new trial under OCGA § 17-8-75 and *O'Neal v. State*, 288 Ga. 219 (702 SE2d 288) (2010). The statute provides,

> Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

OCGA § 17-8-75. "The code section in question is designed to prohibit counsel from stating prejudicial facts which are not in evidence. [Cit.]" *Adams v. State*, 260 Ga. 298, 299 (392 SE2d 866) (1990) (district attorney's statement during closing

argument that "there are no eyewitnesses [to the crime] because [the defendant's] done away with them" was permissible deduction from evidence, not statement of facts not in evidence). The statute requires the trial court to give a curative instruction when the defendant objects to a prosecutor's improper statement, regardless of whether defense counsel requests one. *O'Neal*, 288 Ga. at 221 (1) (after defendant objected to prosecutor's invitation to jurors during closing to return to court over the next year "and see how many times we have this much evidence," trial court's failure to give curative instructions required new trial).

OCGA § 17-8-75 does not apply in this situation, however, because the State did not state prejudicial facts which were not in evidence and did not inject into the case illegal elements "calculated to place before the jury, indirectly and inferentially, a fact which under the rules of evidence the assistant solicitor would not be permitted to demonstrate directly." *Brown v. State*, 118 Ga. App. 617, 619 (165 SE2d 185) (1968). The State simply made an inadvertent reference to the nature of a hearing at which the victim's statement differed from her testimony at trial.

> As a general rule, it is in the trial court's discretion whether to grant a mistrial based on improper character evidence. In considering whether the trial court properly denied the motion, we may consider the nature

of the statement, the other evidence in the case, and the court's and counsel's action in dealing with the impropriety.

(Citation and punctuation omitted.) *King v. State*, 269 Ga. App. 658, 661 (4) (605 SE2d 63) (2004). Lewis notes that the State's improper revocation reference almost directly followed the victim's unsolicited improper reference to a probation violation, which also engendered a motion for a mistrial. The trial court denied the motion but gave curative instructions.

Considering the nature of the State's improper reference, the other evidence in the case, and the court's and counsel's actions in dealing with the impropriety, we conclude that the trial court did not abuse its discretion by denying Lewis's motion for a mistrial.

3. Lewis contends that the trial court erred in overruling his objections to the State's closing argument. We agree that the arguments were improper, but not that they constitute reversible error.

Closing argument must be "derived from evidence properly before the factfinder," *Williams v. State*, 279 Ga. 600, 602 (2) (619 SE2d 649) (2005), and prosecutors and defense counsel are permitted wide latitude in their closing arguments. *Spiller v. State*, 282 Ga. 351, 354 (3) (647 SE2d 64) (2007); *Cooper v.*

7

*State*, 281 Ga. 760, 763 (4) (c) (642 SE2d 817) (2007). Indeed, "[t]he permissible scope of argument is vast: counsel may draw from the evidence properly before the factfinder 'any inference apparently reasonable and legitimate.' *Smalls v. State*, 105 Ga. 669, n. 3 (31 SE 571) (1898)." *Morgan v. State*, 267 Ga. 203 (1) (476 SE2d 747) (1996). But while "[t]he range of discussion during closing argument is wide, . . . counsel should not go outside the facts appearing in the case and lug in extraneous matters as if they were a part of the case." (Citation and punctuation omitted.) *Conner v. State*, 251 Ga. 113, 122-123 (6) (303 S.E.2d 266) (1983).

Here, the prosecutor argued, "I have been doing this for 29 years, a long time. When I first got into this business, I had domestic abuse cases. And just as [one of the witnesses] told you, there are many, many, many of them and most of the women will recant – the vast majority." Lewis objected and was overruled. Lewis made the same objection when the prosecutor continued, "Women will come in and be battered and they will say to you, 'I don't want to press charges,' " and the trial court made the same ruling. Lewis also objected unsuccessfully when the prosecutor argued that "[p]eople in domestic situations get killed" and when the prosecutor began to describe an elderly man's murder to illustrate that a jury will convict based on eyewitness testimony even when the police make mistakes in failing to gather evidence.

8

The prosecutor's arguments referring to her prior criminal experience, the frequency with which the victims she dealt with recanted, and people being killed in domestic situations were not supported by evidence, and the trial court erred in denying Lewis's objections to them. *Connor*, 251 Ga. at 123 (6). Likewise, while a prosecutor may analogize between a defendant and historical criminals such as Jesse James, *James v. State*, 265 Ga. App. 689, 690-691 (1) (a) (595 SE2d 364) (2004), the prosecutor's reference to the murder of an elderly man in this case was not such an analogy and was improper.

The test to determine whether a nonconstitutional error such as the trial court's failure to sustain an objection to an improper closing argument is "whether it is highly probable that the error did not contribute to the judgment." *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976). In this case, despite the victim's testimony that she had previously lied to everyone about Lewis striking her, the evidence to the contrary was strong.

> Furthermore, the trial court charged the jury fully as to what constituted evidence, including instructing them that evidence did not include the attorneys' opening statements or closing arguments. All things considered, including the strength of the State's evidence in this case, we conclude that it is highly probable that the trial court's error in

9

failing to comply with OCGA § 17-7-85 did not contribute to the verdicts.

*Arrington v. State*, 286 Ga. 335, 346 (16) (a) (687 SE2d 438) (2009)

4. Lewis argues that the trial court erred in allowing the State to introduce two similar transactions in which Lewis struck a woman with whom he had a relationship. After a hearing, the trial court granted the State's motion to introduce the transactions for the purpose of showing Lewis's state of mind and course of conduct. At trial, the State presented evidence that in September 2004, a police officer responded to a call at Lewis's apartment and heard a crying female say, "Stop, don't hurt me." No one answered the door so the officer entered using a key from the manager and talked to a woman who was visibly upset and said that Lewis had caused a mark on her arm. The woman testified that Lewis had grabbed her arm because they were arguing and she was about to leave, but denied she had a bruise and admitted she did not want to testify. Lewis pled guilty to simple battery arising from this incident.

Another woman testified that she and Lewis had been arguing in July 2007 and he slapped her in the face because she would not leave him alone. She admitted making a written statement to police alleging that Lewis had hit her in the face twice, but explained that she later attempted to get the charges against him dropped because

10

she had started the altercation. She also denied having been in a relationship with Lewis except "possibly [having his] child," but DNA testing established Lewis was not the father.

> We find no error in the trial court's decision to admit this evidence.

> Evidence that a defendant has committed an independent offense or bad act is admissible if the State shows and the trial court rules that there is a sufficient connection or similarity between the independent offenses or acts and the crime charged so proof of the former tends to prove the latter. When considering the admissibility of similar transaction evidence, the proper focus is on the similarities, not the differences, between the separate crime and the crime in question. We will uphold the trial court's decision to admit a similar transaction unless it is an abuse of discretion.

(Citation omitted.) *Muhammad v. State*, ___ Ga. ___ (Case No. S12A0180, decided April 24, 2012).

We find no abuse of discretion in the trial court's decision to admit this similar transaction evidence.

> In cases of domestic violence, prior incidents of abuse against family members or sexual partners are more generally permitted because there is a logical connection between violent acts against two different persons with whom the accused had a similar emotional or intimate attachment. A prior act can show the accused's attitude or mindset (i.e.,

11

his bent of mind) as to how children or sexual partners should be treated or "disciplined." A prior act can also show his actual course of conduct in reacting to disappointment or anger in such a relationship, evidencing a pattern.

*Smith v. State*, 232 Ga. App. 290, 295 (1) (501 SE2d 523) (1998).

5. Lewis contends the trial court erred in overruling his objection to a detective's testimony that it was common for victims of domestic violence to change their stories about being abused. After the detective testified to that effect, Lewis objected on the ground that "what other people do or may not do is not relevant and germane to the facts of this particular case." The trial court responded that the detective could not testify based on any particular expertise in the field of domestic violence, but only about her own experiences in handling such cases. The witness then testified that she had handled thousands of domestic violence in the previous 15 year and in 99.5 percent of those cases, the victims came in and changed their stories.

Lewis argues that "the obvious purpose of this testimony was to suggest to the jury that [the victim's] sworn testimony in the courtroom was a lie," and an improper comment on whether the victim was telling the truth. We agree. While an expert qualified to testify as an expert in the field of the cycle of domestic violence may be qualified to testify that in such cases, "a victim often will go into denial, minimize the

12

violence which has occurred, and become reluctant to prosecute her partner," *Hawks v. State*, 223 Ga. App. 890, 893 (4) (479 SE2d 186) (1996), this witness was not so qualified. "The fact that, in the officer's previous experience, it was not uncommon for domestic violence victims to recant their stories was not relevant to explain either the conduct or the testimony of the victim[] in the instant case." (Citation and punctuation omitted.) *Howie v. State*, 281 Ga. App. 730, 732 (637 SE2d 134) (2006).

Nonetheless, considering the facts of this case and the evidence as a whole, including the testimony of the two similar transaction witnesses who apparently recanted or minimized their initial complaints against Lewis for striking them, we find it highly improbable that the challenged testimony contributed to the verdict.

6. Finally, Lewis asserts that the State misstated the law regarding its burden of proof during closing argument and that the trial court erred in overruling his objection. This enumeration has no merit, however, because the record shows that the trial court did not overrule the objection. Instead, the court issued curative instructions to the jury, after which Lewis thanked the court. Very shortly after that the court began its charge and instructed the jury about the State's burden of proof and the definition of reasonable doubt. Lewis thus obtained the relief he asked for, and this enumeration raises no issue for review.

*Judgment affirmed.  Adams, J. concurs. McFadden, J., concurs in Divisions 1, 3, 4 and 6 and in the judgment.*