**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 4, 2015**

# In the Court of Appeals of Georgia

A14A1758. GALVAN v. THE STATE.

BARNES, Presiding Judge.

Based on allegations that he sexually abused his stepdaughter, a jury convicted Luis Galvan of two counts of aggravated child molestation and four counts of child molestation. Galvan filed a motion for a new trial, which the trial court denied. On appeal, Galvan contends that the evidence was insufficient to support his convictions because his stepdaughter recanted her allegations; that the trial court erred in allowing a rebuttal witness called by the State to testify to matters that went beyond rebuttal; and that the trial court erred in overruling his objections to allegedly improper comments made by the prosecutor during closing argument. Upon our review, we affirm.[1]

---

[1] Because Galvan was tried in 2011, the new Georgia Evidence Code does not apply to any evidentiary issues discussed in this case. See Ga. Laws 2011, Act 52, § 101.

"Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to sustain the verdict." *Anthony v. State*, 317 Ga. App. 807 (732 SE2d 845) (2012). So viewed, the evidence showed that on the morning of April 23, 2009, Galvan dropped off the 11-year-old victim, his stepdaughter, at her elementary school. As the victim got out of the car, Galvan tried to kiss her, but she refused to let him do so. Upset over the attempted kiss and because she did not want Galvan to pick her up from school that afternoon, the victim began to cry and approached a teacher she knew. The victim told the teacher that she was afraid and needed to speak with the school counselor. When asked why she was afraid, the victim disclosed for the first time that Galvan had been touching her inappropriately at her home. Following school procedure, the teacher did not ask for further details and instead took the victim to see the school counselor. The school counselor spoke with the victim and then with the school principal, who called the police.

Later that same day, the victim was taken to a child advocacy center where a recorded forensic interview was conducted. The victim disclosed to the forensic interviewer that Galvan had sexually abused her on several occasions beginning when she was eight or nine years old and continuing until shortly before her disclosure of

2

the abuse at school that morning. The victim stated that the sexual abuse included instances where Galvan kissed her on the mouth and neck, touched her inappropriately, placed his mouth on her genitals, placed her hand on his penis, digitally penetrated her vagina with his finger, and had vaginal and anal intercourse with her. According to the victim, her mother had inadvertently walked into the room and witnessed two incidents in which Galvan had been touching her in a sexual manner. However, the mother did not report the sexual abuse to the police, the abuse continued, and the victim did not tell anyone else about it until her disclosure at school.

After the forensic interview, a nurse at the child advocacy center performed a physical examination of the victim and photographed the injuries that she observed. The victim told the nurse that she was at the child advocacy center because her stepfather had vaginally and anally raped her on several occasions and had touched her genitals, chest, and neck. During the vaginal examination, the nurse noted that the victim reported extreme discomfort when touched in her vagina with a Q-tip, which prevented the nurse from completing her evaluation of the hymen area for injuries. But the nurse did note that the victim had a wound that was healing in another area of her vagina consistent with vaginal penetration. Additionally, during her rectal

examination of the victim, the nurse observed anal dilation, or anal laxity, which was consistent with repeated anal penetration, given that the victim did not have a medical history of any bowel problems.

After the nurse completed the physical examination, a police investigator conducted a recorded interview with the victim. The victim repeated to the police investigator the allegations of sexual abuse that she had made to the forensic interviewer earlier that day. The investigator also confirmed that the abuse had occurred in several residences where the victim had lived with her family in Dougherty County. Additionally, the investigator spoke with the victim's mother, who admitted to him that she installed a lock on her children's bedroom door in an effort to keep Galvan out of the room so that the victim and her sisters could sleep at night.

Galvan was arrested and indicted on two counts of aggravated child molestation and four counts of child molestation for sexually abusing the victim. At the ensuing jury trial, the State introduced and showed to the jury a video recording of the victim's forensic interview, an audio recording of the victim's interview with the police investigator, and pictures taken during the nurse's physical examination of the victim. Additionally, the elementary school teacher, the forensic interviewer, and

the police investigator testified about the victim's disclosures to them about how Galvan sexually abused her, and the nurse testified about her physical examination of the victim.

However, the victim took the stand and recanted her allegations of sexual abuse. The victim testified that she had fabricated the allegations of abuse because she was mad that Galvan drove her to school and would not let her walk to school with her friends. According to the victim, she came up with the details of the sexual abuse based on what she had seen on a television show that she watched on the weekends. The prosecutor did elicit from the victim that she continued to live with her mother, who still was married to Galvan, and that her mother told her that she wanted the case to be "over" because the family had too many other problems in their lives.

The victim's mother and one of her sisters also took the stand and denied ever having seen any instances of sexual abuse. The mother and sister further testified that shortly after her initial disclosure of abuse, the victim told them that she had lied. According to the mother and sister, they and the victim had been ready to explain to the police that the allegations had been fabricated, but the police had not given them an opportunity to do so and at one point told them it was "too late" for a recantation.

5

After the defense rested, the State called a former assistant district attorney and a deputy sheriff as rebuttal witnesses. The former assistant district attorney testified that he was initially assigned the case and met with the victim in September 2009 to speak with her about the abuse allegations.[2] The victim's mother and sister came with her to the interview and sat outside in the lobby, where the attorney spoke with them apart from the victim. According to the attorney, the victim, her mother, and her sister never suggested to him that the victim had fabricated her sexual abuse allegations against Galvan. Rather, the victim repeated to the attorney the same essential allegations of sexual abuse that she had told the forensic interviewer and the police detective in April 2009. The victim noted to the detective, however, that her family wanted Galvan "to come home."

The deputy sheriff testified that he had spoken with the victim's mother earlier in the week of trial when she had initially failed to show up at court. According to the sheriff, he discussed with the mother the facts surrounding the case, but she never

---

[2] By the time of trial, the attorney had left the district attorney's office for private practice, and the case had been reassigned to a different assistant district attorney.

suggested during the course of their discussion that the victim had lied about the sexual abuse.

After hearing the conflicting testimony, the jury found Galvan guilty of the charged offenses, and the trial court subsequently denied his motion for a new trial. This appeal followed.

1. Galvan contends that there was insufficient evidence to support his aggravated child molestation and child molestation convictions because the victim testified that her allegations of sexual abuse were a lie, and her mother and sister testified that the victim told them she had fabricated the allegations. We disagree in light of the other evidence presented at trial that supported Galvan's conviction for the charged offenses.

> When a criminal defendant challenges the sufficiency of the evidence supporting his . . . conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from the evidence. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

7

(Citations and punctuation omitted.) *Griffin v. State*, 262 Ga. App. 87 (1) (585 SE2d 145) (2003). See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

A person commits the offense of child molestation when he "[d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a). The person commits the offense of aggravated child molestation when he commits an act of child molestation involving an act of sodomy. OCGA § 16-6-4 (c). The allegations of aggravated child molestation and child molestation contained in the indictment in this case were predicated on the multiple acts of sexual abuse previously discussed.

It is true, as Galvan emphasizes on appeal, that the victim recanted her allegations of abuse at trial and her mother and sister testified that she told them her allegations were fabricated. But the State introduced the victim's prior inconsistent statements detailing the abuse through the video recording of her forensic interview, the audio recording of her interview with the police investigator, and the testimony of the elementary school teacher, the forensic interviewer, the police investigator, the nurse, and the former assistant district attorney. Moreover, the nurse testified

8

regarding her physical examination of the victim, which reflected injuries to the victim that were consistent with vaginal and anal penetration, and the State introduced photographs of the injuries taken during the examination.

The jury was entitled to rely on the victim's prior inconsistent statements and the nurse's observations from the physical examination, disbelieve the victim's recantation on the stand and the testimony of her mother and sister, and find that Galvan had sexually abused the victim as alleged in the indictment. See *Miller v. State*, 300 Ga. App. 652, 655 (686 SE2d 302) (2009) ("[A] victim's prior inconsistent statements are admissible as substantive evidence for the jury's consideration. Thus, a jury is authorized to believe the victim's pre-trial statements rather than her in-court disavowal.") (footnote omitted); *Griffin*, 262 Ga. App. at 88 (1) ("The fact that at trial the victim disavowed her prior statements went to the weight and credibility that the jury wished to assign to the State's otherwise sufficient evidence and presents no basis for reversal.") (citation and punctuation omitted). Accordingly, we conclude that the evidence in this case was sufficient to authorize a rational jury to find Galvan guilty beyond a reasonable doubt of the charged offenses. See *Jackson*, 443 U.S. at 319.

2. Galvan next contends that the trial court erred in allowing the former assistant district attorney to testify to matters that went beyond rebuttal. We are unpersuaded.

A trial court's rulings concerning the scope of rebuttal testimony are subject to review only for an abuse of discretion. See *Smith v. State*, 260 Ga. 746, 748 (1) (399 SE2d 66) (1991). Here, the former assistant district attorney's testimony regarding his conversations with the victim and her family in September 2009 was properly introduced to impeach the victim's recantation with her prior inconsistent statement to the attorney, and to impeach the testimony of the mother and sister that they and the victim had been ready to explain that the allegations had been fabricated, but had not been given an opportunity to do so.

Furthermore, even if the attorney's testimony at times went beyond rebuttal of the victim and her mother and sister's testimony, it is well-established that a trial court may exercise its discretion to permit the State to introduce "evidence after the defendant has closed his testimony, even if it was not strictly in rebuttal" and could have been introduced during the State's case-in-chief. (Citation and punctuation omitted.) *Smith*, 260 Ga. at 748 (1). See *Thompson v. State*, 237 Ga. App. 91, 93 (2) (514 SE2d 870) (1999); *Braddock v. State*, 208 Ga. App. 843, 844 (1) (432 SE2d 264)

10

(1993). As we have explained, "[a] trial court has discretion to allow relevant evidence even if such evidence tends to bolster the State's case more than to directly impeach defense evidence." *Evans v. State*, 225 Ga. App. 589, 591 (3) (484 SE2d 320) (1997). We thus discern no abuse of discretion by the trial court in this case.

3. Lastly, Galvan contends that the trial court erred by overruling his objections to the prosecutor's closing argument. He maintains that the trial court should have sustained his objection (a) to the prosecutor's argument that "there could have been" injury to the victim's hymen, and (b) to the prosecutor's comment that he usually handled "gangs and murders" and that this was the first child molestation case he had tried.[3] We conclude that the trial court did not commit reversible error in failing to sustain Galvan's objections.

---

[3] In his appellate brief, Galvan makes reference to additional comments that the prosecutor made during closing argument to which he did not contemporaneously object. By failing to make such an objection, Galvan has waived appellate review of any claims of error relating to those additional comments. See *Peoples v. State*, 295 Ga. 44, 58 (5) (a) (757 SE2d 646) (2014); *Ellington v. State*, 292 Ga. 109, 143 (10) (b) (735 SE2d 736) (2012). Although not applicable here, see supra footnote 1, we note that the new Georgia Evidence Code allows for plain error review in the absence of an objection at trial. See OCGA § 24-1-103 (d) (allowing appellate courts to consider "plain errors affecting substantial rights although such errors were not brought to the attention of the court"); *Durham v. State*, 292 Ga. 239, 240 (2) (734 SE2d 377) (2012) (comparing old and new law regarding plain error review); *Moses v. State*, 328 Ga. App. 625, 632 (4) (760 SE2d 217) (2014) (same).

(a) During closing argument, the prosecutor referred to the testimony of the nurse who performed the physical examination of the victim. The prosecutor noted that the nurse had been unable to dilate the victim's hymen to evaluate it for injuries, and then stated to the jury,

> And I asked [the nurse,] I said, so does that mean you could see injuries or couldn't? She said I don't know. Could there have been? There could have been, if I would have been able to see, but I wasn't going to traumatize this girl anymore.

Galvan then objected on the ground that the prosecutor was misstating the facts, but the trial court overruled his objection.

> As a general rule, prosecutors are granted wide latitude in conducting closing argument, and defining the bounds of such argument is within the trial court's discretion. This wide latitude encompasses the prosecutor's ability to argue reasonable inferences raised by the evidence.

(Punctuation and footnote omitted.) *Wingfield v. State*, 297 Ga. App. 476, 477-478 (2) (677 SE2d 704) (2009).

Here, the nurse testified that the victim expressed extreme discomfort when touched in her vagina with a Q-tip, preventing the nurse from completing her examination of the hymen area for injuries. The nurse further testified that while she

did not see any injuries to the hymen, she could not say whether or not injuries to the hymen had occurred because she was unable to complete her exam. The nurse did note an injury to a different area of the victim's vagina that was consistent with vaginal penetration.

Having reviewed the nurse's testimony, we cannot say that the prosecutor misstated the testimony or drew an inference from it that was unreasonable. Accordingly, the trial court acted within its discretion in permitting the prosecutor's argument and overruling Galvan's objection.

(b) During closing argument, the prosecutor also remarked to the jury that he had tried 117 cases, but that he usually handled "gangs and murders" and that this was the first child molestation case he had tried. Galvan objected to the prosecutor's remarks, but the trial court overruled the objection, stating that the court was "going to give [the prosecutor] some latitude . . . [because] lawyers have an opportunity to talk about the process."

Even if the trial court abused its discretion in overruling Galvan's objection to the prosecutor's remarks about his prior experience handling criminal cases, we conclude that any error was harmless and thus does not entitle Galvan to a new trial. See *Lewis v. State*, 317 Ga. App. 218, 223 (3) (735 SE2d 1) (2012) (trial court should

have sustained objection to prosecutor's arguments regarding her prior criminal experience, but error was harmless). Error in a trial court's failure to sustain an objection to improper closing argument is subject to harmless error analysis. See *Arrington v. State*, 286 Ga. 335, 345 (15) (a) (687 SE2d 438) (2009). In conducting such an analysis, we must determine whether it is highly probable that the trial court's error did not contribute to the verdict. Id. See *Lewis*, 317 Ga. App. at 223 (3).

In this case, we fail to see how the prosecutor's extraneous remarks about his experience trying gang and murder cases and lack of experience trying child molestation cases could have had any impact on the jury's assessment of Galvan's guilt or innocence. Moreover, although the victim recanted her allegations at trial, the State had strong evidence supporting her prior allegations of abuse, namely, medical evidence reflecting injuries to her vagina and anus that were consistent with vaginal and anal penetration. Additionally, the trial court charged the jury fully as to what constituted evidence, including instructing them that the evidence did not include the attorneys' closing arguments. Under these circumstances, we conclude that it is highly probable that any error in the trial court's failure to sustain Galvan's objection

14

to the prosecutor's remarks did not contribute to the verdict. See *Lewis*, 317 Ga. App. at 223 (3).

*Judgment affirmed. Boggs and Branch, JJ., concur*.