**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 4, 2017**

# In the Court of Appeals of Georgia

A17A0676. THOMPSON v. THE STATE.

RICKMAN, Judge.

Aquanus Thompson was tried by a jury and convicted of aggravated battery.[1] On appeal, Thompson contends that the trial court erred by failing to rebuke the prosecutor and give corrective instructions to the jury after the prosecutor made an allegedly improper statement during her closing argument. For the following reasons, we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the defendant guilty of

---

[1] OCGA § 16-5-24 (a).

the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

(Citation and punctuation omitted.) *Hall v. State*, 335 Ga. App. 895 (783 SE2d 400) (2016).

So viewed, the evidence showed that the victim was disabled and required the use of a wheelchair or scooter because she could not walk. Thompson and the victim were dating and the victim characterized their relationship as "rocky." One evening, after Thompson and the victim had been dating for approximately three months, Thompson drove over to the victim's residence. When Thompson arrived at the victim's residence, she was alone and was sitting on her scooter. Thompson asked the victim for some money and when she said "no," the two ended up getting into an "argument."

The victim asked Thompson to leave and he slapped her face twice. The victim tried to call the police twice, but Thompson took her cellular phone and ended the calls. When the victim tried to call the police a third time, Thompson lifted her scooter up, cursed at her, threatened to harm her, and tossed her out of the scooter. After being emptied out of the scooter, the victim immediately knew that her arm was

broken. Thompson looked at the victim's arm, stepped on it, took her phone away, and kicked the side of her head. Thompson then threw the victim's phone in her face and left her residence. After leaving, Thompson came back into the victim's residence and took her phone.

After the victim crawled over to the door to lock it, she was able to get back onto her scooter. The victim went into her mother's room to call 911 on the landline phone. After calling 911, the victim heard someone come into the residence. The victim assumed that it was her mother but then she saw Thompson, who came up to her, pulled her hair, and asked if she believed that he loved her.

The victim went to the hospital where it was confirmed that she had a broken arm. As a result of the injury, the victim had to undergo surgery.

After the incident, Thompson and the victim had a conversation on Facebook. During the conversation, the victim told Thompson that her arm was broken and he replied, "u brought dat [expletive] on[.]" Thompson then explained, "u flopped out dat chair . . . i din hit u so hard u fell out dat chair[.]" Additionally, when Thompson was arrested, after the officer explained to him the purpose of the arrest, Thompson told the arresting officer that "he had barely hit [the victim]."

Thompson testified that on the night of the incident he went to the victim's residence. According to Thompson, he and the victim argued and he "cussed her out like a dog." While denying that he ever touched the victim, Thompson admitted that he called the victim "a cripple," threatened that she was "going to make [him] [expletive] [her] up," and left her on the floor after she "fell" from her scooter.

A trauma radiologist who viewed the x-rays of the victim testified that she had fractures of the ulna and radius. The radiologist testified that the victim's fractures would be "atypical" for a fall because "[t]ypically when someone falls, they fracture the . . . wrist" due to bracing themselves from the fall. The victim did not have any injury to her wrist which led the radiologist to opine that the fractures were not caused by a fall.

The grand jury returned an indictment charging Thompson with aggravated battery, two counts of aggravated assault, robbery by intimidation, burglary in the first degree, two counts of theft by taking, criminal trespass, and hindering emergency telephone call. Thompson was tried by a jury and found guilty of aggravated battery; Thompson was acquitted of the remaining charges. Thompson timely filed a motion for new trial and an amended motion for new trial, both of which were denied.

4

Thompson appeals from both his conviction and the denial of his motion for new trial.

Thompson contends that the trial court erred by failing to rebuke the prosecutor and give corrective instructions to the jury after the prosecutor made an allegedly improper statement during her closing argument.[2]

During her closing argument to the jury, the prosecutor argued that the location of the victim's injury showed that the victim did not brace herself and thus a fall would have been "impossible." Thompson's trial counsel objected and asserted that the prosecutor's argument was an "improper inference from the evidence." The trial court overruled the objection.

---

[2] Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

OCGA § 17-8-75.

"As a general rule, prosecutors are granted wide latitude in conducting closing argument, and defining the bounds of such argument is within the trial court's discretion." (Citation and punctuation omitted.) *Thompson v. State*, 321 Ga. App. 756, 758 (743 SE2d 446) (2013). "This wide latitude encompasses the prosecutor's ability to argue reasonable inferences raised by the evidence." (Citation and punctuation omitted.) Id.

In this case, evidence was presented that the victim's injuries were "atypical" of a fall because usually when people fall they brace themselves and injure their wrists. Due to the lack of injury to the victim's wrist, the trauma radiologist opined that the victim's fractures were not due to a fall. Additionally, the victim testified that her injuries were caused by Thompson "tossing" her out of her scooter. The prosecutor's comment was a reasonable inference raised by the evidence. Accordingly, the trial court did not abuse its discretion in overruling Thompson's objection or in failing to rebuke the prosecutor. See *Galvan v. State*, 330 Ga. App. 589, 595 (3) (a) (768 SE2d 773) (2015) (trial court did not abuse its discretion in failing to overrule defendant's objection to prosecutor's closing argument); see also *Wingfield v. State*, 297 Ga. App. 476, 478 (2) (677 SE2d 704) (2009) ("As the prosecutor's statement was a reasonable inference drawn from the evidence, the trial

6

court did not err in overruling [defendant's] objection to the statement or in failing to rebuke the prosecutor[.]").

*Judgment affirmed. Ellington, P. J., and Andrews, J., concur.*