## S03A0749. MOTE v. THE STATE.
(588 SE2d 748)

HINES, Justice.

Willie Lee Mote was convicted of malice murder, possession of marijuana, and possession of a firearm by a convicted felon, in connection with the death of Elizabeth Ann Simpson.[1] For the reasons that follow, we affirm.

Early on the morning of November 26, 1999, a sheriff's deputy responded to a telephone call about a shooting. The deputy entered the home of Willie Lee Mote and Elizabeth Ann Simpson to find Simpson lying on her back on the living room floor with her pants undone and below her hips. Simpson had no pulse and her body was cold. Mote stated that he did not know that the rifle he had been cleaning was loaded and that it accidentally discharged. Mote appeared to be intoxicated and there was a strong smell of alcohol

---

[1] Simpson was killed on the night of November 25-26, 1999. On January 3, 2000, a Mitchell County grand jury indicted Mote for malice murder, possession of less than one ounce of marijuana, and possession of a firearm by a convicted felon. Mote was tried before a jury on the murder and marijuana charges on July 17, 2000, and found guilty; in a separate proceeding, he pled guilty to possession of a firearm by a convicted felon. On July 17, 2000, Mote was sentenced to life in prison for malice murder, twelve months in prison for possession of marijuana, and five years in prison for possession of a firearm by a convicted felon, all sentences to be served concurrently. He moved for a new trial on July 25, 2000, and amended the motion on July 26, 2002; the motion was denied on January 2, 2003. Mote filed a notice of appeal on January 29, 2003. His appeal was docketed in this Court on February 4, 2003, and submitted for decision on July 18, 2003.

about him. Marijuana was found in the home.

Emergency medical personnel arrived shortly thereafter; at that time, the body had already begun to stiffen. Simpson died of a wound caused by a rifle bullet that entered her right upper chest, traveled through both lungs, pierced the rear side of her aorta, and exited her back. Her teeth were in very poor condition; several were absent. No spent cartridge was found where it would have been expected to be had the weapon discharged in the manner Mote claimed. There was no evidence of gun oil or a cleaning substance on the rifle. The weapon tested negative for accidental discharge and would fire only if the trigger was pulled.

During his arraignment, Mote stated that he was sitting in a chair, with a rifle between his legs, cleaning it, and that it accidentally discharged as Simpson was walking toward him. Forensic evidence showed that the fatal bullet entered Simpson's body at a point more than four feet above the floor, and that it was traveling in a downward direction.

1. The evidence was sufficient to enable a rational trier of fact to find Mote guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Prior to trial, the court denied Mote's motion to suppress certain testimony about prior difficulties between Mote and Simpson. "[E]vidence of prior difficulties is relevant to the relationship between the victim and the defendant, and admissible to show the defendant's motive, intent, and bent of mind in committing the act against the victim. [Cit.]" *Edge v. State*, 275 Ga. 311, 313 (4) (567 SE2d 1) (2002).

Mote specifically complains about the testimony of one witness regarding events that occurred five to seven years before trial as being too remote. But such a lapse of time goes to the weight and credibility of the testimony, not its admissibility. *Givens v. State*, 273 Ga. 818, 823 (4) (546 SE2d 509) (2001).

3. Mote also urges that the testimony of Warren, Gonzalez, and White concerning statements Simpson made to them about prior difficulties between her and Mote should have been excluded as hearsay. As noted above, evidence of prior difficulties between the victim and defendant is relevant. See Division 2, supra. However, that evidence must meet other tests of admissibility. *Roper v. State*, 263 Ga. 201, 202 (2) (429 SE2d 668) (1993).

The State contends that any hearsay testimony by these witnesses was admissible under the necessity exception to the hearsay exclusion rule. OCGA § 24-3-1 (b). However, for such testimony to be admissible under this exception, the declarant must be unavailable

and the statement must be accompanied by particularized guarantees of trustworthiness. *Abraha v. State*, 271 Ga. 309, 313 (2) (518 SE2d 894) (1999). The State made no showing of the required particularized guarantees of trustworthiness, asking only how long each witness had known Simpson, and whether that witness was familiar with the relationship between Simpson and Mote; there was no testimony about the nature of the relationships between these witnesses and Simpson. See *Felder v. State*, 270 Ga. 641, 645 (8) (514 SE2d 416) (1999). Compare *McPherson v. State*, 274 Ga. 444, 450 (10) (553 SE2d 569) (2001). However, admission of this hearsay testimony was harmless.

The statements at issue addressed the relationship between Mote and Simpson, its violent nature, and Mote's attitude toward Simpson. But each witness also testified about events of which the witness had direct knowledge and which addressed these same issues.

Warren testified that she had once seen Mote come to Simpson's place of work and strike Simpson, knocking out a tooth, and necessitating that the police be called. On several other occasions, Warren witnessed Mote enter Simpson's workplace while intoxicated and verbally abuse Simpson, telling her to give him money or car keys, and attempting to take these items from her if they were not given. He often called her "bitch" and "m—f—." His behavior was such that, on several occasions, Mote was told to leave the building. The hearsay testimony of Warren was that on another occasion Simpson arrived at work with a bruised face and said that Mote had knocked out another tooth. The night of her death, Simpson told Warren that she did not know what she could expect from Mote; Simpson declined Warren's offer to stay with her, expressing fear for her property if she left the house.

Gonzalez testified on direct examination that Mote would often come to Simpson's workplace, intoxicated, yelling at Simpson, cursing her, and demanding car keys. Mote called Simpson "bitch" and "m—f—," and would "talk about her like she was a dog"; he would do these things regardless of how many people were present. On at least three occasions, she heard Mote threaten Simpson, including at least one threat to kill her. Gonzalez saw bruises on Simpson. Gonzalez further testified that Simpson said that Mote sometimes dragged her off a couch when she tried to sleep and that bruises on her were caused by him.

White testified that Simpson once came to work with a black eye, and that she first said she bumped into a door, but later admitted that Mote had struck her. White also testified to Simpson complaining on several occasions about Mote dragging her out of bed and keeping her awake all night.

Another witness, whose testimony Mote does not assert was inadmissible hearsay, testified similarly to Gonzalez and Warren concerning Mote's behavior toward Simpson at her workplace. This witness also testified that Simpson reported being afraid of Mote when he was drinking, that he would not let her sleep, and that he destroyed some of her property.

Although the hearsay testimony Mote complains about was not admissible, there was substantial competent evidence of an abusive relationship and of Mote's vicious bent of mind toward Simpson, such that we conclude that the inadmissible evidence did not have a material effect on the verdicts. See *Simmons v. State*, 271 Ga. 563, 567 (4) (c) (522 SE2d 451) (1999); *Felder*, supra at 646 (8); *Jones v. State*, 265 Ga. 84, 86 (453 SE2d 716) (1995).

4. In his final enumeration of error, Mote asserts that he did not receive effective assistance of trial counsel. In order to prevail on this claim, he must show both that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Although he now raises several grounds of ineffective assistance, only one such ground was arguably presented to the trial court in his motion for new trial. We address it; the other grounds are waived.[2] *Bagwell v. State*, 270 Ga. 175, 179 (1) (f) (508 SE2d 385) (1998). That ground, counsel's alleged failure to properly contest the admission of testimony about prior difficulties between Mote and Simpson, did not prejudice Mote. As noted in Divisions 2 and 3, supra, such testimony was either admissible or harmless error.

*Judgments affirmed. All the Justices concur.*

DECIDED NOVEMBER 17, 2003 —
RECONSIDERATION DENIED DECEMBER 11, 2003.

*W. Paul Fryer*, for appellant.

*J. Brown Moseley, District Attorney, Ronald R. Parker, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jill M. Zubler, Assistant Attorney General*, for appellee.

---

[2] The grounds we do not address are that counsel did not properly cross-examine a witness, did not file a motion under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986) concerning the State's exercise of jury strikes, and generally failed to prepare for trial.