## S10A1883. SHARPE v. THE STATE.
### (707 SE2d 338)

MELTON, Justice.

Following his conviction for murder, aggravated assault, and possession of a firearm during the commission of a crime, Montrell Sharpe appeals, contending that the trial court made numerous errors and that he received ineffective assistance of counsel.[1] For the reasons set forth below, we affirm Sharpe's convictions but remand for resentencing.

1. In the light most favorable to the verdict, the record shows that, on November 1, 2006, Chris Holloway, Jamel Harrison, and Jamari Tilley were standing on the front porch of Holloway's house. Sharpe then pulled up in a gold Chevrolet, said "what's up," and opened fire. Holloway was shot in the leg, and Harrison was shot in the torso. Harrison later died. Holloway, who had known Sharpe for three years, told police that he had seen Sharpe in the driver's seat of the passing car and that he believed that Sharpe shot at them, although he did not see a gun.[2] Tilley, however, testified that he saw the driver of the car holding a gun and shooting out the window at

---

[1] On March 28, 2007, Sharpe was indicted for murder, felony murder, two counts of aggravated assault (one for Chris Holloway and one for Jamel Harrison), and two counts of possession of a firearm during the commission of a crime. Following a jury trial, Sharpe was found guilty on all counts other than felony murder, and, on October 18, 2007, Sharpe was sentenced to life imprisonment for murder, 20 consecutive years for each aggravated assault conviction, and five years for each possession of a firearm count to run consecutively with the murder charge but concurrently with each other. On November 1, 2007, Sharpe filed a motion for new trial, and amended it on May 22, 2008. After new counsel was appointed, a second amendment to the motion for new trial was filed on February 6, 2009. The trial court denied the motion on April 28, 2010. Sharpe's timely appeal was docketed in this Court to the September 2010 term and submitted for decision on the briefs.

[2] Holloway later identified Sharpe from a photo lineup and identified Sharpe as the shooter in court.

them. Tilley's description of the gunman was consistent with Sharpe's features. Further testimony showed that, approximately one month before the shooting now in question, Sharpe tried to shoot Holloway with a gun over a debt.

This evidence was sufficient to enable the jury to find Sharpe guilty of the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Sharpe contends and the State concedes that the trial court erred in sentencing Sharpe by failing to merge his conviction for the aggravated assault of Harrison into his conviction for the murder of Harrison. "Although there is no merger of these crimes as a matter of law, our review of the record establishes that the aggravated assault conviction[ ] merged into the malice murder conviction[ ] as a matter of fact." (Citation omitted.) *Vergara v. State*, 287 Ga. 194, 196 (1) (b) (695 SE2d 215) (2010). As a result, the conviction and sentence for the aggravated assault of Harrison must be vacated and the case remanded to the trial court for resentencing. Id.[3]

3. Sharpe argues that the trial court erred by denying his motion to strike Juror No. 32 for cause. During voir dire, Juror No. 32 testified that, in the past, he had spent two years teaching police departments how to perform underwater searches for bodies and evidence. When Juror No. 32 was asked if this would bias him in favor of police officers, he responded: "Probably I would (inaudible) their words more than anybody else." Upon further questioning, however, Juror No. 32 stated unequivocally that he could view all of the evidence fairly and impartially. In these situations,

> [t]he trial court has wide discretion in deciding whether a juror should be excused for cause. *Taylor v. State*, 243 Ga. 222 (253 SE2d 191) (1979). The fact that a juror has formed an opinion about the credibility of a witness does not mandate that he be excused for cause. *Tennon v. State*, 235 Ga. 594 (220 SE2d 914) (1975), cert. den. 426 U. S. 908 [(96 SC 2231, 48 LE2d 833)] (1976). Where an otherwise quali- fied juror indicates that he can and will fairly evaluate the evidence, the party who wishes to eliminate him must do so by means of the peremptory strike. There was no abuse of discretion in the trial court's failure to strike this prospec- tive juror for cause.

*Foster v. State*, 248 Ga. 409, 411 (3) (283 SE2d 873) (1981).

---

[3] This analysis does not affect Sharpe's conviction for the aggravated assault of Holloway.

4. Sharpe contends that the trial court erred by admitting an array of photos, including his own, that he contends were obviously mug shots or booking photographs relating to a prior crime. More specifically, Sharpe argues that the use of his mug shot in the photo array improperly placed his character into evidence. The record shows that, on or about November 2, 2006, Holloway was shown a photo array from which he identified Sharpe. Based on our review of the photo array, it does appear that the photographs are mug shots. Sharpe was not arrested until January 7, 2007; therefore, the mug shot used in the photo array could not have been related to the crime for which he was currently being tried and forms the basis of this appeal. To the contrary, the mug shot would have to be related to a prior crime. In general, mug shots of a defendant taken after arrest with regard to the crime for which he is currently being prosecuted do not prejudice the defendant. See, e.g., *Rittenhouse v. State*, 272 Ga. 78, 79 (3) (526 SE2d 342) (2000) ("booking photographs have been held not to inject character into evidence because they do not suggest that the defendant has committed previous crimes"). If a mug shot relating to a *previous* crime is introduced into evidence, however, "such a photograph is the equivalent of oral testimony establishing [the defendant's] arrest for a prior crime and would therefore impermissibly place his character in evidence." *Roundtree v. State*, 181 Ga. App. 594 (353 SE2d 88) (1987) (introduction of photograph with caption indicating date of a prior arrest impermissibly placed defendant's character in evidence). Accordingly, the trial court erred by admitting Sharpe's mug shot from a prior arrest. This error, nonetheless, proves harmless in this case, based on the overwhelming evidence of Sharpe's guilt.

5. Sharpe contends that the trial court gave the jury an unrequested and inappropriate *Allen* charge. The record shows that, after two hours of deliberation, the jury foreman informed the court that the jurors were split and could not reach a verdict. The foreman further indicated that the jurors were displeased with the presentation of evidence from both the State and the defense. The trial court responded to the foreman's statement by giving the jury what appeared to be, in essence, an abbreviated *Allen* charge. The trial court instructed:

Somebody is going to have to decide this case, okay? And there's no reason to think that the next jury that gets it is going to be any different than you. Or that the case is going to be tried any differently. The witnesses are the witnesses, the law is the law, the photographs are the photographs. What I'm going to do is send you home for the evening. We can't feed you down here tonight. And get a fresh start

tomorrow. And I may give you some additional instructions about the need to work for unity and to decide the case. And I will have some instructions probably for you tomorrow on that. But let's get a fresh start. And you take the cases the way they are and then you decide them. And I have to do the same thing, I take the cases the way they are and I have to decide them on the cases that I decide. So, this one is given to you to decide.

In *Burchette v. State*, 278 Ga. 1 (596 SE2d 162) (2004), this Court disapproved of language instructing jurors that a case "must be decided" by some jury. We determined, however, that the inclusion of such language would not create reversible error where that language was only a small part of an otherwise fair and non-coercive charge. Id. at 6. In such cases, the offending language does not cause the charge to become so "coercive so as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors." (Citation and punctuation omitted.) *Luker v. State*, 291 Ga. App. 434, 436 (2) (662 SE2d 240) (2008). Moreover, even in situations where the questionable language is more prominent, other factors, such as the length of deliberations following the *Allen* charge and the results of polling the jury on the verdict, may be considered to determine whether a given charge is unduly coercive or not.

> [T]hese factors play an important role in determining coerciveness when there is a possibility the charge could be coercive, i.e., when it has not been determined as a matter of law that the charge is not coercive. See *Widner v. State*, 280 Ga. 675 (3) (631 SE2d 675) (2006) (where this Court determined *Burchette* was to be applied prospective only and, relying on *Hyde v. State*, 196 Ga. 475 (8) (26 SE2d 744) (1943), held that the version of the *Allen* charge at issue in *Widner* was not coercive, with no consideration given to the length of the jurors' deliberations or the result of polling the jury).

*Lowery v. State*, 282 Ga. 68, 72 (4) (a) (646 SE2d 67) (2007). Based on these factors, the record in this case would not support a finding that the trial court's *Allen* charge improperly coerced the jury, as the jurors deliberated for a considerable time after the instruction was given and reaffirmed their verdict when polled. There was no reversible error here. Id.

6. Sharpe contends that the trial court erred by denying his request to recharge the jury on presumption of innocence, burden of

proof, reasonable doubt, and Sharpe's failure to testify, following the jury's initial report that it had been unable to reach a verdict. The facts show that, despite Sharpe's request, the jury, itself, did not ask for any recharge. "A trial court has a duty to recharge the jury on issues for which the jury requests a recharge." *Dill v. State*, 277 Ga. 150, 151 (2) (587 SE2d 56) (2003). As a general matter, however, where no such request has been made, "[t]he need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial court." (Citation omitted.) *Peebles v. State*, 260 Ga. 165, 167 (5) (a) (391 SE2d 639) (1990). In this case, although the trial court determined that the jury did not need additional instructions, it did choose to provide the jurors with a printed copy of the entire charge to use as a reference during deliberations, and Sharpe agrees that the written charge was correct. Under these circumstances, the trial court did not abuse its discretion.

7. Sharpe argues that the trial court erred in two aspects regarding the removal and replacement of Juror Hamilton with Juror Hall: (a) the trial court erred by failing to ask the remaining jurors whether they had been adversely affected by Juror Hamilton and (b) the trial court erred by failing to instruct the reconstituted jury that deliberations should begin anew.

The transcript reveals that, on the morning after deliberations had begun and an *Allen* charge had been given, the trial court was notified by Juror Hamilton that she had just discovered that her daughter-in-law was close friends with Sharpe. During questioning by defense counsel, Juror Hamilton explained that she had told the other jurors only that she probably would not be with them any longer because she had a family member involved in the case. Juror Hamilton stated that none of the other jurors asked her any questions about the situation or her statement. The trial court excused Juror Hamilton from any further service in the matter and denied Sharpe's subsequent motion for mistrial. The trial court then had the jury brought in and explained that it had replaced Juror Hamilton with alternate Juror Hall. The trial court further told the jurors that it wanted them to deliberate more on the case and that it was going to provide them with a copy of the jury instructions.

The trial court stated:

> When I told you to start fresh today, that was because I wanted you to have a fresh start and also you need to bring Ms. Hall on board, too, since she has joined you rather late in the game and you need to bring her up to speed by going over where you've been before. And I trust that you've done that.

Sharpe now contends that this instruction was deficient.

With regard to Sharpe's contention that the trial court erred by failing to ask the remaining jurors whether they had been adversely affected by Juror Hamilton, the transcript does not indicate that the trial court erred. As an initial matter, Sharpe did not request that the trial court question the remaining jurors, and, in any event, Juror Hamilton's responses clearly indicate that her statement to the other jurors about her conflict was exceedingly minimal and that the others had no reaction to it. Under these circumstances, the trial court did not err by not questioning the remaining jurors about Juror Hamilton.

Sharpe's second contention that the trial court erred by failing to instruct the jurors to start deliberations anew is unsupported by the transcript. As set forth above, that is exactly what the trial court, in essence, did instruct the reconstituted jury to do by bringing Juror Hall "up to speed" after making a "fresh start." Therefore, Sharpe's contentions fail.

8. Finally, Sharpe contends that trial counsel rendered ineffective assistance by failing to (1) request that the trial court examine the remaining jurors whether they had been affected by Juror Hamilton after she had been removed and (2) failing to object to the trial court's *Allen* charge. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). As discussed above, however, there was no error on which to premise these claims of ineffective assistance. Accordingly, Sharpe's claims in this regard are unsupported, and he can show neither prejudice nor harm.

*Judgment affirmed in part, vacated in part, and remanded for resentencing. All the Justices concur.*

DECIDED JANUARY 24, 2011 —
RECONSIDERATION DENIED FEBRUARY 28, 2011.

*Steven L. Sparger*, for appellant.

*Spencer Lawton, Jr., District Attorney, Julayaun M. Waters, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.