S12A0180. MUHAMMAD v. THE STATE.
(725 SE2d 302)

MELTON, Justice.

Following a jury trial, Hakim Muhammad appeals his conviction for malice murder, felony murder, aggravated assault, and tampering with evidence.[1] Muhammad contends that the evidence was insuffi-

---

[1] On February 1, 2010, Muhammad was indicted in Rockdale County for malice murder,

cient to support the verdict and that the trial court erred by admitting similar transaction evidence. For the reasons set forth below, we affirm.

1. Viewed in the light most favorable to the verdict, the record shows that, in the fall of 2009, Muhammad and his wife Shelia separated. On October 17, 2009, Shelia rented a house that was in short walking distance from the couple's former marital residence, where Muhammad continued to live. At approximately 7:05 a.m. on November 4, 2009, Muhammad's son, Hakeem, saw Muhammad and Shelia leave the marital residence in Shelia's car while Hakeem was waiting for his school bus.[2] Hakeem observed that Muhammad was driving and that the vehicle turned in the direction of Shelia's new residence. At about 7:36 a.m., Gbolii Burton, who lived next door to the house Shelia had just rented, heard the sound of breaking glass outside and called 911. Deputy Huner and Deputy Blake responded. Deputy Huner went to the back of the house and saw a broken window with glass lying on the ground below the window, indicating that the window had been broken from the inside. Through the window, Deputy Huner observed Muhammad descending an interior staircase. As soon as Muhammad saw the deputy, he turned and went back up the stairs. Deputy Huner radioed Deputy Blake that Muhammad was coming out the front door, and Deputy Blake confronted Muhammad there. Deputy Blake testified that Muhammad "was scurrying trying to leave the area real fast." After being ordered to stop, Muhammad calmly said, "My wife is inside and I don't think she's breathing." Inside the home, Shelia's body was found lying on the floor next to a piece of white ribbon, which Shelia's son, Javonte, had previously seen lying on the floor of Muhammad's home. Based on marks on her neck, the State's medical experts determined that the ribbon had been used to strangle Shelia to death. DNA testing showed that Shelia's DNA was on the middle and ends of the ribbon where it had been around her neck, but Muhammad's DNA was only on the ends of the ribbon,

---

two counts of felony murder, two counts of aggravated assault, and two counts of tampering with evidence. The trial court directed a verdict on one count of felony murder and one count of aggravated assault, and, following a jury trial commencing on October 18, 2010, Muhammad was found guilty on the remaining charges. The trial court sentenced Muhammad to life imprisonment for malice murder with six concurrent months for tampering with evidence. The conviction for felony murder was vacated by operation of law, see *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993), and the conviction for aggravated assault merged with the conviction for malice murder. Muhammad filed a motion for new trial on March 28, 2011 and an amended motion on July 1, 2011. The motion for new trial was denied on August 4, 2011. Muhammad subsequently filed a timely notice of appeal, and his case was docketed to the January 2012 term of this Court and submitted for decision on the briefs.

[2] Apparently, Shelia had decided to stay at the marital residence because she was afraid that there had been a burglary attempt at her rented residence two nights earlier.

where it would have been tied or held during strangulation. Following a search, Shelia's wedding ring was found in Muhammad's pocket. Later, when asked by Lt. Wolfe in a recorded interview why the situation between Muhammad and Shelia had gone so far and become violent, Muhammad replied that Shelia had actually tried to choke him. Muhammad admitted he removed Shelia's wedding ring from her finger as she lay on the floor and put it in his pocket. He also admitted he broke the rear window. Muhammad denied any intention to harm Shelia, however, and testified that he broke into her rental home from the outside to see if she was okay.

In addition, the evidence showed that, on at least two prior occasions, there had been domestic violence between Muhammad and Shelia. In one such instance, Muhammad grabbed Shelia by the throat prior to pushing her backward. Also, similar transaction evidence was admitted showing that Muhammad had a prior romantic involvement with Alvinice Muhammad (no relation). Alvinice purchased a home in Marietta that she shared with two female housemates. Alvinice allowed Muhammad to stay at that home for a few weeks. Muhammad began acting violently toward Alvinice, however, and Alvinice asked Muhammad to move out. Muhammad refused. Alvinice then decided to obtain a restraining order against Muhammad. On the morning she planned to do so, Alvinice woke to find Muhammad straddling her body and choking her with both hands on her throat. Muhammad released Alvinice only after one of her roommates ran into the room. Thereafter, Alvinice obtained the restraining order. In retaliation, Muhammad burned down Alvinice's house, telling her: "I told you I could get into the house anytime I got ready, and if I can't live in the house, nobody can live in the house."

This evidence was sufficient to enable the jury to find Muhammad guilty of the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Muhammad contends that the trial court erred by admitting evidence regarding his prior conviction for arson, arguing that it was not sufficiently similar to Shelia's murder to constitute a similar transaction. We disagree.

> Evidence that a defendant has committed an independent offense or bad act is admissible if the State shows and the trial court rules that there is a sufficient connection or similarity between the independent offenses or acts and the crime charged so proof of the former tends to prove the latter. . . . When considering the admissibility of similar transaction evidence, the proper focus is on the similarities, not the differences, between the separate crime and the

crime in question. We will uphold the trial court's decision to admit a similar transaction unless it is an abuse of discretion.

(Citations and punctuation omitted.) *Whitehead v. State*, 287 Ga. 242, 249 (3) (695 SE2d 255) (2010). In the present case, the State offered the evidence of the prior arson to show Muhammad's bent of mind or course of conduct in using escalating degrees of violence toward women. Muhammad pushed and shoved both Alvinice and Shelia. Muhammad choked both Alvinice and Shelia. With both women, there was the development of a romantic relationship, a separation, and a resulting escalation of domestic violence including choking. The similarities are apparent. As such, the trial court did not err in its determination that Muhammad's crime against Alvinice was sufficiently similar to the murder of Shelia to constitute an admissible similar transaction. Id.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 24, 2012.

*Charles M. Evans*, for appellant.

*Richard R. Read, District Attorney, Roberta A. Earnhardt, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine L. Iannuzzi, Assistant Attorney General*, for appellee.