## S12A0958. HOLLOMAN v. THE STATE.

(729 SE2d 344)

HINES, Justice.

Malcolm Holloman appeals his conviction for felony murder while in the commission of aggravated assault and the denial of his motion for new trial in connection with the fatal stabbing of Robert Calloway. He maintains that there were violations of the rule of sequestration; erroneous admissions into evidence of certain photographs, his prior convictions, and a prior incident as a similar transaction; and error in regard to the trial court's instructions to the jury. Finding the challenges to be without merit, we affirm.[1]

Viewed in the light most favorable to the verdicts, the record reflects the following. On May 17, 2008, Robert Calloway spent the day with co-worker Jackson. They, along with another individual, drove to a home in "Orchard Hill Trailer Park," which was considered a "gathering place" for people in the community. When they arrived, Holloman approached the open window on the passenger side of the vehicle and began to argue with Calloway. Holloman stated, "what's this BS, I heard you were looking for me." Calloway responded that Holloman should "go on" because Calloway did not "want to hear that BS." Calloway exited the vehicle, and the two men stood in the road and continued to argue. The argument escalated, and Holloman pulled out a "blade knife"; he "took a swing" at Calloway with the knife, and Calloway attempted to respond by swinging a beer bottle

---

[1] The crimes occurred on May 17, 2008. On June 16, 2008, a Turner County grand jury returned an indictment against Holloman, charging him with Count 1 – malice murder; Count 2 – felony murder while in the commission of aggravated assault; and Count 3 – aggravated assault. He was tried before a jury March 24-25, 2009, and was acquitted on Count 1, but was found guilty on Counts 2 and 3. By judgment dated March 31, 2009, and filed April 2, 2009, Holloman was sentenced to life in prison on Count 2; Count 3 merged for the purpose of sentencing. A motion for new trial was filed on April 17, 2009, and amended on September 22, 2009, and June 16, 2011. The motion for new trial, as amended, was denied on October 13, 2011. A notice of appeal was filed on October 18, 2011, and the case was docketed in this Court in the April 2012 term. The appeal was submitted for decision on the briefs.

at Holloman. Holloman "stuck" Calloway with the knife, and Calloway stepped back, but Holloman stabbed him again; Calloway collapsed. As Holloman fled the scene on foot, he made a "death sign" with his hands.

Police arrived on the scene and found Calloway lying on the ground and bleeding profusely; a woman was holding a towel to his chest. Emergency medical personnel transported Calloway to the hospital, but efforts to revive him failed, and he was pronounced dead.

Later that day, Holloman turned himself in to police, and they took possession of the black tee shirt he was wearing and a knife found in his right front pocket. There was blood on the items, and the shirt was found to contain Calloway's DNA as well as that of Holloman. Calloway died from multiple sharp focus wounds to his chest, including one to the back of his heart. The wounds were consistent with those that could have been inflicted with a knife like the one found in Holloman's pocket.

At trial, the State presented evidence of an incident which had occurred about a month before the fatal stabbing in which Holloman went to a man's home, resumed a previous argument, and was ordered by the man to leave; Holloman stabbed the man in the back twice. Holloman testified at trial, admitting that he stabbed Calloway, but he claimed that Calloway first attacked him in a rage, and that he thought that Calloway had a gun because he was known to carry one.

1. The evidence was sufficient to enable any rational trier of fact to find Holloman guilty beyond a reasonable doubt of the felony murder of Calloway. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Holloman contends that the trial court erred by permitting the State to have the investigating agent from the Georgia Bureau of Investigation ("GBI") remain in the courtroom at counsel table during the entire trial, and thereby, violate the rule of sequestration. See OCGA § 24-9-61.[2] But, the contention is unavailing.

The State requested that the agent be excused from the rule because he was the lead agent on the case and was needed to help "keep everything straight." In the situation in which the State maintains that it needs the presence of the primary investigator for the orderly presentation of the case, excepting the investigator from

---

[2] OCGA § 24-9-61 provides:
Except as otherwise provided in Code Section 24-9-61.1, in all cases either party shall have the right to have the witnesses of the other party examined out of the hearing of each other. The court shall take proper care to effect this object as far as practicable and convenient, but no mere irregularity shall exclude a witness.

the rule of sequestration is within the discretion of the trial court. *Williams v. State*, 277 Ga. 853, 856-857 (4) (596 SE2d 597) (2004). Holloman acknowledges that it is a matter of the trial court's discretion, but he cites *Carter v. State*, 271 Ga. App. 588, 590 (610 SE2d 181) (2005), and urges that such discretion was abused in that the State's statement of need was the type of "empty assertion" found lacking in that case.

As this Court has noted,

> [i]n *Carter*, the Court of Appeals questioned the trial court's ready acceptance of the State's conclusory assertion that the law enforcement officer at issue was needed in the courtroom, but ultimately it applied the principle that when the prosecutor indicates that a witness is needed in the courtroom for the orderly presentation of evidence, there is no abuse of the trial court's discretion in permitting the witness to remain.

*Warner v. State*, 281 Ga. 763, 765 (2) (642 SE2d 821) (2007) (Citation and punctuation omitted.). Moreover, in the present case, the prosecutor elaborated that the agent was needed because of the seriousness of the case and the fact that there were expected to be more than 40 witnesses and numerous exhibits introduced into evidence. No abuse of the trial court's discretion has been shown. Id.

3. Holloman further complains that the trial court erred when it did not require the GBI agent to be called as a witness first. However, as Holloman concedes, it was likewise within the trial court's discretion to allow the primary investigator to testify after other witnesses. *Hardy v. State*, 245 Ga. 673 (266 SE2d 489) (1980). And, contrary to Holloman's assertion, to do so does not run afoul of the holding in *Stuart v. State*, 123 Ga. App. 311 (180 SE2d 581) (1971), when the trial court refuses to direct that the unsequestered State's witness testify first so as, in this case, not to dictate how the State "runs [its] case." *Hardy v. State*, supra.

4. Holloman next contends that the trial court erred in allowing the jury to view what he terms "autopsy pictures," claiming that they were prejudicial and highly inflammatory. He specifically cites State's Exhibits Numbers 2, 10, and 11, which he describes as depicting "the thoracotomy, or large incision below the left nipple of the deceased."

As Holloman acknowledges in argument, the incision at issue was not part of the autopsy of the victim, but was made by an emergency room physician in an attempt to save the victim's life. At the hearing on Holloman's motion in limine with respect to the photographs, the State maintained that they were necessary to show

the injuries inflicted on the victim, and that there was no way to crop the incision from the photographs because of its nearness to the stab wounds.

It is within the discretion of the trial court whether to admit photographic evidence. *Stewart v. State*, 286 Ga. 669, 670 (3) (690 SE2d 811) (2010). Further, photographs which show pre-autopsy incisions and which depict the location and nature of the victim's wounds are admissible because they are relevant and material. *Banks v. State*, 281 Ga. 678, 680 (2) (642 SE2d 679) (2007). They are admissible even if they are duplicative and might inflame the jury, and regardless of whether the cause of death is in dispute. *Roberts v. State*, 282 Ga. 548, 552 (9) (651 SE2d 689) (2007).

There is little question that the incision was in proximity to the victim's stab wounds; but, even if it was demonstrated that the photographs could have been cropped so as to adequately show the victim's fatal injuries absent the incision, it is of no aid to Holloman. For if the photographs could credibly be deemed gratuitous, and thus controlled by this Court's decision in *Brown v. State*, 250 Ga. 862, 867 (302 SE2d 347) (1983), their admission would have to be deemed harmless in light of the overwhelming evidence supporting the jury's verdicts. *Heard v. State*, 257 Ga. 1, 2 (2) (b) (354 SE2d 115) (1987).

5. Holloman maintains that the trial court erred in allowing evidence of his prior convictions that were older than ten years to be introduced into evidence. See OCGA § 24-9-84.1.[3] But, no error has been shown.

---

[3] OCGA § 24-9-84.1 provides in relevant part:

    (a) *General rule.* For the purpose of attacking the credibility of a witness, or of the defendant, if the defendant testifies:

        (1) Evidence that a witness has been convicted of a crime shall be admitted if the crime was punishable by death or imprisonment of one year or more under the law under which the witness was convicted if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the witness;

        (2) Evidence that the defendant has been convicted of a crime shall be admitted if the crime was punishable by death or imprisonment of one year or more under the law under which the defendant was convicted if the court determines that the probative value of admitting the evidence substantially outweighs its prejudicial effect to the defendant; and

        (3) Evidence that any witness or the defendant has been convicted of a crime shall be admitted if it involved dishonesty or making a false statement, regardless of the punishment that could be imposed for such offense.

    (b) *Time limit.* Evidence of a conviction under subsection (a) of this Code section is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness or the defendant from the confinement imposed for that conviction, whichever is the later date, unless the

The following exchange occurred on defense counsel's direct examination of Holloman.

> COUNSEL: This isn't the first time you've been in court either, is it?
> HOLLOMAN: No, ma'am. I have not — this is not my first time being in court.
> COUNSEL: You got convicted once of possession of cocaine, right?
> HOLLOMAN: Yes, ma'am. I got convicted of that.
> COUNSEL: And that was back in 2007?
> HOLLOMAN: Yes, ma'am, April of 2007.

The trial court permitted evidence of Holloman's prior convictions for the limited purpose of impeaching his statement that he had been convicted once. See OCGA § 24-9-82.[4] Holloman urges that this evidence was not admissible under OCGA § 24-9-82 in that his statement that he was *once* convicted of possession of cocaine was true because his other convictions were for other crimes. However, it was within the trial court's discretion to determine whether the jury might have interpreted Holloman's testimony as implying that he had only one previous encounter with the law. *McNeal v. State*, 289 Ga. 711, 713 (2) (715 SE2d 95) (2011).

6. Holloman asserts that the trial court erred by allowing into evidence as a similar transaction testimony from Rufus Jones about a violent incident with Holloman that occurred about a month before the fatal stabbing of Calloway. He complains that the evidence was sought by the State to show his course of conduct and bent of mind, which he maintains is inappropriate because it is "dangerously close to being his character," and is rarely at issue. On the contrary, permitting evidence of a similar prior incident involving the defendant in order to show the defendant's course of conduct or bent of mind is a legitimate and proper purpose, and is not an infrequent occurrence at trial. See, e.g., *Jackson v. State*, 291 Ga. 54 (727 SE2d 454) (2012); *Muhammad v. State*, 290 Ga. 880 (2) (725 SE2d 302)

court determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old, as calculated in this subsection, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

[4] OCGA § 24-9-82 states:
A witness may be impeached by disproving the facts testified to by him.

(2012). And, when a similar transaction is offered to show the defendant's bent of mind or course of conduct, a lesser degree of similarity is required than when such evidence is introduced to prove identity. *Neal v. State*, 290 Ga. 563, 564 (2) (722 SE2d 765) (2012). This Court is to review the trial court's decision to admit similar transaction evidence for any abuse of its discretion in doing so; the court's factual findings as to the similarity of the incidents are reviewed under a clearly erroneous standard. *McNaughton v. State*, 290 Ga. 894 (2) (725 SE2d 590) (2012).

In this case, the trial court ruled that there was a great deal of similarity between the previous incident and the case at bar, including time frame, the circumstances of the altercations, and the weapons used. And, indeed there was. As to the prior incident, Jones testified that about a month before the killing of Calloway, Jones had argued with Holloman, and a couple of days after the argument, Holloman came to Jones's home and they argued again. Jones ordered Holloman to leave, but he refused. Jones attempted to push Holloman out of his yard, the two men "locked up," and Holloman stabbed Jones twice in the back with a knife.

The similarities between the prior stabbing and the one on trial are apparent, and the trial court did not abuse its discretion in admitting evidence of the incident between Holloman and Jones. *McNaughton v. State*, supra.

7. Lastly, Holloman contends that the trial court erred in not recharging the jury when it submitted written questions about the jury instructions it had been given, thereby "allowing the jury to suffer confusion regarding jury instructions and answers to [its] questions, which caused [it] to misunderstand the law."

During deliberations, the jury requested a "description" of felony murder, and asked if aggravated assault was "the same as felony murder," and "is it felony murder if he is defending himself?" After consultation with counsel for both sides, the trial court directed the jury to review the written instructions in its possession and to write down any other specific questions it might have.[5] The jury deliberated further and then came back with a note asking for "Webster's

---

[5] The trial court stated:

I am not trying to be vague, but the answers to all three questions are in the request to charge that I sent out to you. If I – how do I put this – if I start trying to answer questions out loud to you without providing opportunity for counsel to make their comments, it just causes a lot more problems because of the law as it stands, okay? Those requests to charge that you have in your hand contain the law, and that's why we have a meeting to determine what law is required to go out that I'm required to charge you. So if there is something more specific than these three or if there is something about the request to charge, if you would write that down. We

Dictionary definition" of the word "felony," stating, "we don't want to know what felony murder is, we just want the definition of felony." After again meeting with counsel, the trial court wrote on the note that the jury had the definition of all the crimes it was authorized to consider in the case in the jury charge, and sent the note back to the jury. After further deliberation, the jury returned unanimous verdicts.

Certainly, a trial court has a duty to recharge the jury regarding issues for which the jury so requests a recharge. *Sharpe v. State*, 288 Ga. 565, 569 (6) (707 SE2d 338) (2011). But, that is not what happened in this case. The jury did not ask for the court to recharge its instructions, but rather to expound on them. Thus, it was within the trial court's sound discretion to determine the need, breadth, and formation of any additional jury instructions. Id. Moreover, the trial court fashioned its responses after consulting with Holloman. And, the trial court did orally recharge the jury in that it directed it to again review the written instructions which it had been provided, and to which Holloman does not substantively challenge as containing any error. Under these circumstances, no abuse of the trial court's discretion can be found. Id.

*Judgments affirmed. All the Justices concur.*

DECIDED JULY 2, 2012.

*John R. Mobley II*, for appellant.

*C. Paul Bowden, District Attorney, Kevin E. Hutto, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine R. Thrower, Assistant Attorney General*, for appellee.

---

have to have it very specific so that we don't create a problem with regard to the jury deliberations. If it's different than these three that I just got and read, then I'll be happy to try to fix that. But what I need is it written down so that I can get with counsel for both Mr. Holloman and the State and try to give an answer to you that will clear up your mind as to the question that you have. So if it's a little bit different than this or more specific – I see you looking I think at the request to charge, and so what I need for you to do, if you can narrow it down for me other than these three because specifically these three are answered in the requests to charge. I read it to you and it's in there.