## S12A1678. LESLIE v. THE STATE.
### (738 SE2d 42)

BENHAM, Justice.

Appellant Sajid Fitzgerald Leslie was convicted of murder and arson in connection with the death of his former girlfriend Lori Hastings.[1] We affirm his convictions for the reasons set forth below.

1. On April 22, 1999, at approximately 11:10 p.m., police were dispatched at the request of firefighters to a parking lot adjacent to a mall in Richmond County, Georgia. Firefighters had found a car with its passenger compartment engulfed in flames. Once the fire was extinguished, authorities determined that a burned body was inside the car. Police recovered jewelry from the body, including a watch that was stopped at 11:00. Through dental records and paperwork related to the vehicle, police identified the body as being that of the victim, Ms. Hastings. The medical examiner testified that the victim was alive when the fire began and that she died from soot and smoke

---

[1] The victim was killed on April 22, 1999. On July 13, 1999, a Richmond County grand jury returned a true bill of indictment charging appellant with malice murder, felony murder, and arson during the commission of a crime. A jury returned a verdict of guilty on all charges after the case was tried from January 3 to January 12, 2000. The trial court sentenced appellant to life plus twenty years for malice murder and arson. The felony murder count was vacated by operation of law. Appellant moved for a new trial on February 9, 2000 and, after having new appellate counsel appointed in the spring of 2011, filed an amended motion for new trial on December 9, 2011. The trial court held a hearing on the motion for new trial on December 13, 2011, and denied the motion on December 16, 2011. On January 13, 2012, appellant requested thirty extra days to file his notice of appeal. The trial court granted the motion on January 25, 2012. Appellant filed his notice of appeal on February 8, 2012, which was within the extended time-frame for filing. The case was docketed to the September 2012 term of this Court for a decision to be made on the briefs.

inhalation and from thermal burns. A forensic expert testified that the victim's clothing and components from the vehicle tested positive for the presence of gasoline. Police spoke to appellant because he had dated the victim. During his first interview with authorities on April 25, 1999,[2] the police investigator noticed that appellant had injuries to his face and that the skin pigmentation on appellant's face was discolored. Appellant told police that he had sustained injuries to his face from falling off a motorcycle. Appellant also told the authorities that his face was burned when his carburetor backfired while he was fixing his car. The mother of appellant's son testified that earlier in the evening of the night the victim was killed, she saw appellant and he did not have any injuries to his face. The victim's 12-year-old son testified that his mother received a message from appellant on her pager at around 10:00 p.m. on the night of her death and that she left their home stating that she would return in an hour. A fire investigation expert testified that the vehicle fire that killed the victim was intentionally set using gasoline as an accelerant; that the carburetor of appellant's vehicle did not show any evidence of a backfire; and opined that the injuries to appellant's face were caused by a flash fire like the one that destroyed the victim's car and were not caused by backfire from a carburetor. At trial, appellant took the stand and denied that he had killed the victim. Appellant testified that he was at a dog fight at the time in question, but admitted that he could not provide any contact information regarding any persons who could corroborate his alibi.

The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant alleges the trial court erred when it admitted improper character evidence by (a) allowing testimony concerning a similar transaction and by (b) allowing testimony concerning appellant's use of an alias to purchase a pager.

(a) At the time appellant was tried in 2000, similar transaction evidence could be admitted to show the defendant's bent of mind or course of conduct, and, when proffered for these purposes, requires a lesser degree of similarity than when proffered for the purpose of identity. *Holloman v. State*, 291 Ga. 338 (6) (729 SE2d 344) (2012); *Neal v. State*, 290 Ga. 563 (2) (722 SE2d 765) (2012).[3] In cases of

---

[2] The first interview was determined to be non-custodial. Two custodial interviews occurred on April 26 and April 27, 1999.

[3] Georgia adopted a new Evidence Code effective January 1, 2013.

domestic violence, prior instances of abuse toward sexual partners "are more generally permitted because there is a logical connection between violent acts against two different persons with whom the accused had a similar emotional or intimate attachment. [Cit.]" *Hall v. State*, 287 Ga. 755 (2) (699 SE2d 321) (2010). We review the trial court's decision to admit such evidence for an abuse of discretion. *Holloman*, 291 Ga. at 343; *Hall v. State*, 287 Ga. at 757.

At the pretrial hearing on the State's motion to introduce similar transaction evidence, the mother of appellant's son testified that in 1998, the victim contacted her by telephone to tell her that the victim and appellant were having an intimate relationship. Although appellant had recently moved out of their home and their five-year relationship had ended, the mother of appellant's son was unaware of the appellant's relationship with the victim and told the victim as much. The victim put appellant on the phone call, telling him to confirm their relationship, but he became upset and left the conversation. Shortly after the phone call, appellant appeared at the home of his son's mother. When she would not allow him inside, he broke through the back door and held a gun to her head before leaving with their son. The mother of appellant's son testified that appellant was angry because she told the victim that she and appellant had lived together. The trial court found that this evidence was "relevant to show bent of mind, the course of conduct, and intent of [appellant]" and was not being introduced for the purpose of showing appellant's character.

We cannot say the trial court abused its discretion. The evidence revealed a course of conduct in which appellant acted violently toward women with whom he had intimate relationships even after the relationship had ended. Accordingly, this enumerated error cannot be sustained.

(b) At trial, a witness testified that appellant purchased a pager using the alias "Anellerro Dellacrose." Appellant alleges this testimony constituted improper character evidence because it had the effect of showing the jury that he had a propensity for criminal activity because he bought a pager using a false name. The trial transcript shows that appellant moved for a mistrial regarding this testimony. The State responded that it would show, with the production of other evidence during the course of the trial, that the testimony was not merely to introduce appellant's character.[4] Appellant

---

[4] Later in the trial, the State showed that Anellerro Dellacrose was a person referenced in a book called *The Mafia Dynasty* which authorities found in appellant's motel room. Appellant testified at trial that he knew Mr. Dellacrose from Chicago and bought the pager for him. The State also showed that in his statement to police, appellant gave names of other persons mentioned in the book, telling authorities that they could corroborate his statements.

agreed that he would revisit his motion, at a later time, if necessary, and the trial court made no ruling except to say it would allow appellant to raise the issue again. The trial proceeded without any further objection from appellant about this witness's testimony. Under such circumstances, the issue was not preserved for review. See *Jones v. State*, 268 Ga. 12 (3) (483 SE2d 871) (1997).

3. At trial, the victim's ex-husband testified and he denied making a statement to his then girlfriend that he would kill her in the same manner as the victim was killed. Based on this testimony, appellant alleges the trial court erred when it did not allow him to impeach the ex-husband and/or support his theory of defense that someone else committed the crime with evidence of his prior bad acts, namely his conviction for simple battery of the girlfriend and the factual circumstances underlying that conviction. We disagree. At the time of the trial, Georgia's former Evidence Code provided at OCGA § 24-9-84.1 (a) (3) (2000) that "Evidence that any witness . . . has been convicted of a crime shall be admitted if it involved dishonesty or making a false statement, regardless of the punishment that could be imposed for such offense." Since the conviction at issue did not involve dishonesty or making a false statement and was inadmissible inasmuch as the ex-husband had an uncontested alibi on the night of the murder, the trial court did not err in barring its admission. Id.; *Fields v. State*, 285 Ga. App. 345 (2) (646 SE2d 326) (2007). See also *Curry v. State*, 291 Ga. 446 (5) (729 SE2d 370) (2012) ("Evidence that merely casts a bare suspicion on another or 'raise(s) a conjectural inference as to the commission of the crime by another is not admissible. (Cits.)' [Cit.]"). We note further that appellant was able to impeach the ex-husband's testimony about the alleged threat he made to the girlfriend when the girlfriend was called by the defense to testify at trial. The defense was also able to present evidence that another person, a doctor against whom the victim had a sexual harassment complaint, may have been an alternate suspect for the crime. The omission of the ex-husband's prior conviction was harmless.

4. Appellant alleges the trial court erred when it failed to exclude appellant's first statement to police on the grounds that appellant was not given warnings pursuant to *Miranda*.[5] Appellant contends that because the investigator saw burns on appellant's face and may have subjectively considered appellant to be a suspect during his initial questioning, the police were required to advise him of his *Miranda* rights before questioning. We disagree. *Miranda* warnings are required when a person is formally arrested or restrained to a

---

[5] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

degree associated with a formal arrest. *Sosniak v. State*, 287 Ga. 279 (1) (A) (1) (695 SE2d 604) (2010). A police officer's undisclosed suspicions about the person being questioned do not factor into the determination as to whether a person is in custody. Id. at 281. See also *Anguiano v. State*, 313 Ga. App. 449, 453 (721 SE2d 652) (2011) (" '(e)ven where police have probable cause to arrest at the time of the interrogation and intend to arrest the suspect in the future, the intent to arrest in the future is irrelevant to the custody issue, unless the police communicate the intent during the course of the interrogation.' [Cit.]"). At the *Jackson-Denno*[6] hearing it was shown that when appellant had his first meeting with police, the investigator did not consider appellant to be a suspect at the time, appellant drove himself to the police station, appellant spoke with the investigator in an unlocked interview room, appellant was not restrained, and appellant was free to leave. Under these circumstances, appellant was not in custody, and the police were not required to give him *Miranda* warnings prior to questioning him. *Sosniak v. State*, supra, 287 Ga. at 281-282. The trial court did not err.

5. Appellant alleges the trial court erred when it allowed the admission of photographs of the victim's body at the crime scene and on the autopsy table. This enumeration of error is without merit. Crime scene and pre-autopsy photos are admissible to show the nature and extent of the wounds and the location of physical evidence at the scene, as well as to assist the testimony of the medical examiner. *Wilcher v. State*, 291 Ga. 613 (2) (732 SE2d 81) (2012).

6. Appellant contends that the trial court permitted the intro-duction of hearsay when the lead investigator testified that he found inconsistencies when he compared appellant's statement to the state-ment of another witness who was interviewed by a different investi-gator; when the lead investigator testified that he made an inquiry to the GBI as to whether there were any dog fights on the night of the victim's murder; and when a pager store employee testified that, while being questioned by police at her workplace, she consulted a computerized application to determine what name appellant used when he purchased a pager. At the time this case was tried, Georgia law defined hearsay evidence as "that which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons." OCGA § 24-3-1 (a) (2000). None of the testimony of which appellant now complains constitutes hearsay. The lead investigator testified to actions he personally took to inves-tigate the case, and the pager store employee testified as to what she

---

[6] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

did to refresh her own recollection when police questioned her. None of these statements rests mainly with the veracity of others. As such, the trial court did not err.

7. Appellant alleges he was denied due process inasmuch as the resolution of his motion for new trial was unreasonably delayed and that he was prejudiced because he may have lost access to alibi witnesses.

> This Court has recognized that substantial delays experienced during the criminal appellate process implicate due process rights. We utilize an analysis based on the four speedy trial factors set forth in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), which are "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."

(Citation and punctuation omitted.) *Whitaker v. State*, 291 Ga. 139 (3) (728 SE2d 209) (2012). Assuming appellant can meet the first three factors of the *Barker v. Wingo* test, appellant must still present specific evidence of prejudice. Id. at 144 ("Appellant's 'generalized speculation about the delay's effect on witness memories and evidence is not the kind of "specific evidence" required to show prejudice in the appellate-delay context. (Cit.)' [Cit.]"). In this case, appellant never proffered any evidence of prejudice at the motion for new trial hearing. Therefore, this Court cannot conclude that appellant was prejudiced from the delay of his appeal.

8. Appellant alleges his trial attorneys rendered constitutionally ineffective assistance. To prevail on a claim of ineffective assistance of trial counsel, appellant

> must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citation and punctuation omitted.) *Pruitt v. State*, 282 Ga. 30, 34 (4) (644 SE2d 837) (2007). For the reasons that follow, appellant has not met this burden.

(a) Appellant alleges his attorneys were ineffective when they failed to preserve an objection to the composition of the jury pool. The record shows that defense counsel orally objected to the composition of the jury immediately after the jury was selected and before the

parties commenced the *Jackson-Denno* hearing and shows that defense counsel moved the trial court to stay the trial and allow a more in-depth inquiry into the jury's composition. The trial court denied the motion, and defense counsel made no further effort to challenge the composition of the jury pool.[7] Both of appellant's trial attorneys testified at the motion for new trial hearing, but they were not questioned about this issue, and appellant presented no other evidence about the composition of the jury pool. In such a situation we must presume that defense counsel's decision not to continue challenging the composition of the jury pool was a matter of trial strategy. See *Brown v. State*, 288 Ga. 902 (5) (708 SE2d 294) (2011). The question then remains whether appellant can show that no competent attorney would have made the decision not to object further. Id. at 909. Without more, we cannot say that no other competent attorney would have made the same decision as appellant's counsel.

(b) Appellant contends his attorneys provided ineffective assistance by failing to present an arson expert to refute the expert arson testimony presented by the State regarding appellant's assertion that he received burns to his face from a carburetor backfiring. At the motion for new trial hearing, defense counsel conceded that they did not engage an arson expert. However, appellant did not proffer any evidence of an expert who would have testified in appellant's favor, namely that there was an indication that the carburetor had backfired. As such, this claim cannot be sustained. *Hendricks v. State*, 290 Ga. 238 (4) (b) (719 SE2d 466) (2011).

(c) Appellant alleges his attorneys failed to sufficiently challenge the testimony of the victim's current boyfriend, failed to sufficiently cross-examine the witness who sold the pager to appellant, failed to rebut the inference that the names appellant referenced in his statement to police and the alias he used to purchase a pager were names from a book found in appellant's motel room, and failed to sufficiently challenge testimony from the victim's son that the victim received a page from appellant on the night she was killed. None of these alleged instances of deficient performance was raised at the earliest practicable moment (i.e., in the amended motion for new trial) and so they are deemed to be waived. *Mote v. State*, 277 Ga. 429 (4) (588 SE2d 748) (2003); *Bagwell v. State*, 270 Ga. 175 (1) (f) (508 SE2d 385) (1998).

*Judgment affirmed. All the Justices concur.*

---

[7] See OCGA § 15-12-162 (a challenge to the impaneling of a jury is made in writing).

DECIDED FEBRUARY 4, 2013.

*Holly G. Chapman*, for appellant.

*R. Ashley Wright, District Attorney, Charles R. Sheppard, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine L. Iannuzzi, Assistant Attorney General*, for appellee.